Vilas vs. Mason.

# VILAS VS. MASON.

*Pleading : Counterclaim — Amendment.— Estoppel.— Conversion — Fixtures — Landlord and Tenant.*

1. Complaint against lessee of a hotel, alleging that when his term expired, instead of surrendering possession as he had covenanted to do, he carried off certain articles forming part of the property leased. Counterclaim for the value of articles owned by defendant, but which plaintiff refused to allow him to remove, when he surrendered possession of the building. *Held*, a good counterclaim under subd. 1, § 11, ch. 125, R. S.

2. A promise by the landlord in such a case to pay for such articles when they should be adjudged to belong to the tenant, would not create any new cause of action in the tenant's favor; since he must prove his right and obtain his judgment for the property independently of the promise.

3. A counterclaim, alleging such promise, could not, therefore, be upheld as one arising *upon contract*.

4. Where a pleading attempts to state facts showing a cause of action on a promise, but, failing to do so, states facts showing a cause of action for a tort, the court should grant the appropriate relief for such tort.

5. An amendment which merely completes the statement of a cause of action or ground of defense, defectively stated, should be allowed on just terms.

6. Defendant having claimed title to the articles mentioned in his counterclaim under a purchase from a third party, and plaintiff having introduced evidence of paramount title in himself, it was not error to allow an amendment of the counterclaim by alleging any facts which would *estop* plaintiff from setting up such paramount title.

7. PAINE, J., is of opinion that defendant was entitled to avail himself of facts showing such estoppel, without pleading them; but this point is not decided by the court.

8. An owner of property, who stands by and sees a third party selling it under claim of title, without asserting his own title, or giving the purchaser any notice thereof, is estopped, as against such purchaser, from asserting it afterward.

9. In such a case the purchaser need not show by further proof that such owner *intended* to influence or *did* influence his conduct in making the purchase; since the law will so *presume* from the facts stated.

10. When any construction of the evidence which the jury were at liberty to give would sustain the verdict, and the court below refused a new trial, this court will not interfere on the ground that the verdict is against the evidence.

11. If, at the expiration of a lease, when lessee was about to remove property belonging to him, lessor should claim certain articles thereof,

attached to the premises, as his own, and forbid their removal, that would be a conversion.

12. Where a dispute arises between the parties as to the ownership of articles, which, if lessee's with a right of removal, are personal property, but, if lessor's, are fixtures, and lessor, a few days before the expiration of the term, but in contemplation thereof and with a view to affect the lessee's action at the time of such expiration, claims title to the articles and forbids lessee to remove them, threatening an injunction if he attempts it, the latter, on surrendering the premises, may leave the articles and treat the lessor's acts as a conversion.

APPEAL from the Circuit Court for *Dane* County.

The premises known as the "Vilas House," in the city of Madison, were held by one Dutcher from the plaintiff, under a lease which was to expire on the first of October, 1864; and in April, 1864, with plaintiff's consent, Dutcher's interest under the lease was sold and assigned to the defendant, who entered into possession. In October, 1864, the lease was renewed for one year by oral agreement between plaintiff and defendant. During the first week of October, 1865, defendant left the premises, and thereafter this action was brought against him on the covenants of the lease: 1. For removing from the premises certain articles, such as locks, door bells, curtain hangings, bell cords and tassels, shelves, pumps, water pipes, etc., etc., and for damaging the interior walls of the building, and not leaving the same in good repair, to plaintiff's damage $500. 2. For holding over a number of days after his term expired, to plaintiff's damage $100. 3. For keeping and leaving the house in a filthy condition, so as greatly to injure the reputation thereof, and so as to compel plaintiff to expend large sums in cleaning the same, etc., to his damage $400.

The answer admitted the taking away of certain of the articles named in the complaint, and alleged that they belonged to defendant; but it denied that the articles were of the value alleged, and denied all the alleged injuries. It then set up a counterclaim for value of certain "chattels, furniture and fixtures" in said hotel, to wit: one annunciator in the office, worth $300; the

desk under the same, worth $15; three large wood boxes, worth $30; the tank and force pump in the wash room, worth $100; an ironing table, worth $5; one blind in the kitchen window, worth $4.50; and sundry other specified articles, of the aggregate value of $150 — making the total amount of the counterclaim $604.50. In respect to these articles it is alleged, in substance, that they were placed in said hotel by one Stevens, a prior lessee; that they were sold to the successive lessees, down to and including Dutcher; that at the time of the assignment of Dutcher's lease to defendant, the latter purchased these articles of him, and that they "were placed in said hotel to be used by said lessees for the purpose of trade, and for their convenience, use and profit in the management of the hotel business." It is further alleged, that on or about the 20th of September, 1865, plaintiff forbade defendant from removing said articles from the hotel, and it was thereupon agreed between them that in case defendant should not remove them, plaintiff would pay him their value whenever the ownership thereof "should be adjudged, by suit or otherwise, to belong to defendant;" that the articles were left in the hotel in pursuance of this agreement; and that the same are now in plaintiff's possession. Reply in denial of the counterclaim, but admitting that plaintiff forbade the removal of the "chattels and fixtures," to which such counterclaim refers, and that they are in his possession.

On the trial, plaintiff introduced evidence tending to show that the articles removed from the hotel by defendant were attached to the building as fixtures, and were worth from $180 to $200. Against his objection, one of his witnesses was permitted to testify, on cross-examination, that a water pipe and certain gas pipes (included among said articles) which were removed by the witness, by defendant's order, had been put in the house by defendant or Dutcher. Plaintiff's evidence also tended

to show: 1. That when defendant went out, plaintiff was obliged to make repairs amounting to over $75, which should have been made by defendant, and that he was also obliged to have the walls whitewashed at an expense of $185, a part of which (but precisely what part did not appear) was rendered necessary by the negligent use of a portion of the house.' 2. That defendant's furniture and goods, or a part of them, remained in the dining room, chambers, halls, pantry and kitchen of the hotel for five or six days after the expiration of the lease; and that workmen employed by plaintiff to repair the building were hindered in their work in consequence; but none of the witnesses undertook to estimate the damages which accrued to plaintiff from this cause.

Defendant then introduced evidence tending to show: 1. That the value of some of the articles removed by him was less than estimated by plaintiff's witnesses. 2. That he himself put in certain others of said articles. 3. That several days before the end of defendant's term, plaintiff promised to give him all the time he wanted to move, and let him have two or three rooms to store his goods in, if he would not hinder his (plaintiff's) men, and that no complaint was made at the time that plaintiff's workmen were being hindered by defendant. 4. That the premises were not left in as bad condition, or as much out of repair, as represented by plaintiff. The court refused to admit, under the answer, evidence to estop plaintiff from claiming title to the articles mentioned in the counterclaim; but, against objection, allowed the counterclaim to be amended, so as to set up such an estoppel, on the ground that, just before the purchase of said articles by defendant from Dutcher was completed, they had been pointed out as his own by Dutcher to defendant in plaintiff's presence, and that plaintiff acquiesced in such statement, and defendant purchased on the faith thereof. Objections to the recep-

tion of any evidence under the counterclaim were then overruled. Defendant testified as follows: "I saw the plaintiff about the 10th of April, 1864. He and Dutcher and I went over the house to look at the articles. * * * Mr. Dutcher said that the annunciator in the office, and the desk under it, belonged to him. *Mr. Vilas* said nothing. * * * When we got to the wash room, Dutcher said that he put in the tank and the force pump, and they belonged to him. *Judge Vilas* said nothing." The witness further testified that the annunciator would have been worth to him about $400; that the desk under it was worth $25; and the tank and force pump, $100. On cross-examination he said: "I have lived in Madison since April 8, 1864. * * * Was introduced to the plaintiff by Mr. Dutcher; met him coming out of the city hall. We were in search of him to obtain his consent to the transfer of the lease. I was to pay Dutcher $9,000 for his entire interest in the furniture and the lease. The bargain was completed, except as to the plaintiff's consent to it, before we saw him. [Witness then testified to going over the house in September, 1865, with Dutcher and the plaintiff, to discuss and settle the differences of opinion as to the ownership of the annunciator and other articles.] When I met plaintiff at the city hall, at the time I bought of Dutcher, he gave his consent to the transfer. He did not go to the house then; I went into possession on the second day after — on the 11th of April, 1864; am not certain that I saw the plaintiff again until I was in possession; think we went over the house twice, as I have stated, viz. : on the 10th of April, and in September, 1865; cannot state what conversation took place between us; don't recollect it all; plaintiff never abandoned his claim to the annunciator in my presence. * * * I think the plaintiff, Dutcher and myself, went through the house before I took possession. I know there were three in the party. This was after the meeting at the city hall."

Mr. Dutcher testified, that when he and defendant had "agreed pretty much" as to the terms of his proposed sale of furniture and leasehold interest, he told defendant it would be of no use to trade, unless plaintiff would give his consent. "We started out to find him, and met him at the city hall. He there consented to our going on and making the trade; and we did it. I think it was mentioned at the city hall that plaintiff was to come up to the hotel the next day. At any rate he was there the next day. At that time we had entirely agreed on the trade, although the papers were not then made out. *Mason* was to pay me $9,000 for my interest, being the lease and furniture. I said we had better look over the house and see what articles belonged to me, and what to *Mr. Vilas*, to save future questions." The witness then testified that the three went over the house together; that he (witness) pointed out and claimed as his own the annunciator and desk, force pump, ironing table and wood boxes; that plaintiff "said about most of these things, that he didn't know about them, and presumed I wouldn't sell any thing that didn't belong to me." He further testified that the annunciator was worth $200; the desk, $5; the ironing table, $1 or $2; the wood boxes, $6 or $7 each; and the force pump about $50.

As to the circumstances under which the articles mentioned in the counterclaim were left in the hotel after defendant's term expired, the evidence tended to sustain the allegations of the answer on that point, and to show that, before defendant agreed to leave said articles, plaintiff threatened him with a suit to restrain him from removing them.

The rebutting testimony for the plaintiff tended to show that he never went over the hotel with Dutcher and the defendant to see what articles were claimed as having belonged to Dutcher before his sale to defendant, until September, 1865, a few days before defendant's

term expired; that both the annunciator and force pump were put in and paid for by the proprietors of the hotel, and belonged to plaintiff; and that the annunciator was not worth more than $75, nor, when new, more than about $155.

The court refused to instruct the jury, as requested by the plaintiff, that if the annunciator and force pump were so attached to the freehold that they could not be removed without leaving wires and pipes fastened in and projecting from the walls, then the tenant could not remove them. It then gave the following among other instructions: (7.) That if, at the time of the sale by Dutcher to defendant, Dutcher claimed as his own articles named in the counterclaim, and plaintiff assented to the claim, and they were sold to defendant with plaintiff's knowledge and consent, the latter could not now claim them even as fixtures. (10.) That if, before said purchase was completed, plaintiff and defendant, together with Mr. Dutcher, went over the house, and the articles which Mr. Dutcher claimed were pointed out, and plaintiff stood by and saw defendant purchase them, himself making no claim to them, he was estopped from now setting up any claim to them. (11.) That it is competent for the landlord and tenant to agree by parol as to the right to remove fixtures, and this, too, after the termination of the tenancy; and this right may extend to the subtenant by assignment with the consent of the landlord. (16.) That plaintiff was entitled to recover his damages for defendant's holding over his term, unless he held over in pursuance of an agreement that he might do so; and that, in estimating such damages, the jury might take into consideration the rent theretofore paid for the premises; but that, under the proof, if they gave rent for the occupation, total or partial, of the house, that was the full measure of damages.

Verdict for defendant for $270.75. Motion for a new

trial on the ground of error in the admission of evidence, and in the instructions, and because the verdict was contrary to the evidence and the instructions. Motion denied ; and from a judgment on the verdict plaintiff appealed.

*Wm. F. Vilas*, for appellant, to the point that the amendment of the counterclaim, allowed at the trial, changed substantially the defendant's claim, and that its allowance was an abuse of discretion, cited R. S. ch. 125, § 3 ; *Newton v. Allis*, 12 Wis. 378 ; *Sweet v. Mitchell*, 15 id. 641 ; 19 id. 524 ; *Larkin v. Noonan*, id. 82 ; *Stevens v. Brooks*, 23 id. 196. 2. The instructions failed to point out to the jury that before plaintiff could be estopped from claiming title to the articles mentioned in the counterclaim, it must be shown that his admissions were intended to influence defendant's conduct, and that defendant acted upon the faith of them, and would suffer a wrongful injury from plaintiff's being allowed to prove the truth. *Norton v. Kearney*, 10 Wis. 443 ; *Gove v. White*, 20 id. 425 ; *Campbell v. Smith*, 9 id. 305 ; *Welland Canal Co. v. Hathaway*, 8 Wend. 480 ; 1 Greenl. Ev. § 209. Counsel further contended, that upon defendant's own evidence there was clearly no estoppel, because the purchase by defendant of Dutcher's interest was complete before the pretended admissions were made, and because, according to Dutcher's testimony, plaintiff merely said, about most of these things, that he "did n't know about them." 3. Counsel also contended that it was apparent, from a mere inspection of the case, that the jury had entirely disregarded the proof of damages suffered by the plaintiff, and had allowed the defendant the value of the fixtures claimed by him at higher rates than those fixed by his own witness, Dutcher, and, as the chief item, had allowed him for the annunciator in face of the clearest proof that it had always belonged to the freehold. 4. *Prima facie* the defendant lost all right to the fix-

tures he claims, because he did not remove them before the expiration of his tenancy. Amos & Ferard on Fixt. 96–107 ; *Davis v. Buffum*, 51 Me. 160. Defendant must show a *demand and refusal*, and some good reason why he did not remove them within his term. *Davis v. Buffum, supra.* He here pleads the landlord's agreement, which has simply the effect of an acknowledgment that defendant did not *abandon* the fixtures to the freeholder ; but he does *not* plead a demand and refusal. Besides, a cause of action sounding in tort is not a proper counterclaim to an action on the covenants of the lease. R. S. ch. 125, § 11. Nor does the counterclaim show a cause of action on plaintiff's promise, because the promise is *conditioned* upon a previous adjudication in defendant's favor.

*John D. Gurnee* and *Wm. Welch*, for respondent, in support of the amendment to the counterclaim, cited *Gillett v. Robbins*, 12 Wis. 319 ; *Gill v. Rice*, 13 id. 549 ; *Bean v. Moore*, 2 Chand. 44. To the point that plaintiff's agreement to pay for the articles named in the counterclaim was valid, they cited Amos & Ferard on Fixt. 79 ; *Hallen v. Runder*, 1 C. M. & R. 266. To the point that the tenant had a right to remove the force pump and annunciator, as trade fixtures, they cited *Elwes v. Maw*, 3 East, 38 ; *Smith v. Moore*, 26 Ill. 392 ; *Ombony v. Jones*, 19 N. Y. 234, and cases there referred to ; *Dubois v. Kelley*, 10 Barb. 500 ; 2 Stephen's Com. 194, note 9 ; 2 Burr. Law Dic. 992.

PAINE, J. Assuming that an amendment of the answer was necessary, in order to let in the proof of the defendant's counterclaim, it was not an abuse of discretion for the court to allow it. Where the amendment is one merely necessary to perfect a cause of action or defense defectively stated, it has been too often held proper to allow it upon the trial, upon just terms, to be longer an open question. This would not be contro-

verted; but the appellant's counsel contends that the amendment here allowed introduced an entirely new and different counterclaim from that originally set up. An examination fails to sustain this view. The original counterclaim was, in substance, for the conversion of certain articles of property which the defendant claimed to own, and which, he alleged, the plaintiff had refused to allow him to remove when he surrendered possession of the hotel. The counterclaim of which proof was finally admitted, under the amendment, was of precisely the same conversion of the same articles. So it is impossible to say it was a new and different defense or counterclaim.

The ground upon which this was assumed was, that in the original answer the defendant had set up that he acquired title to these articles by purchase from some of the former lessees of the hotel, to whom they belonged. And as the amendment allowed set forth facts showing an estoppel as against the plaintiff, preventing him from questioning the defendant's title under such alleged purchase, by reason of his having stood by at the time and seen the sale, without making any objection or claim of title in himself, it is insisted that this makes the counterclaim a new and different one. The utmost that could be said of it would be, that it was alleging a different source of title in the defendant. Even if it were clearly so, that would not change the counterclaim. The essential fact was, that he had title; not whether he acquired it from one person or another. It was not necessary for him to set forth the origin of his title. It is not usual to do so, either in actions relating to real or those relating to personal property. Sometimes, where the controversy may be narrowed by more specific pleading, the source of title is disclosed. But usually there is a mere general allegation of ownership; and in this case it would have been sufficient, if the defendant had alleged, generally, that he owned the articles in

question, and then set forth facts showing a conversion by the plaintiff. If, then, on the trial, he had proved a purchase from the former lessee, and the delivery of possession under it, and the plaintiff, to defeat the title thus derived, had offered proof of a paramount title in himself, the defendant might have rebutted such proof by showing that the plaintiff was estopped from asserting such paramount title, by reason of having stood by without asserting it at the time of the defendant's purchase.

As it was, therefore, unnecessary to set forth the source of the defendant's title, if the pleader did set it forth incorrectly it was entirely proper, if necessary, to allow the essential allegation of title to be perfected by amendment according to the fact. It was no more a change of the counterclaim, than it would be a change of the cause of action, if a plaintiff should sue for an injury to real estate, and unnecessarily allege that he purchased it from A., to allow him to amend and show, in fact, that it was purchased from B.

But even assuming that, where the source of title is unnecessarily alleged, it must be proved as laid, unless changed by amendment, I do not think any amendment was necessary here. I do not think there was any change here, even as to the alleged source of the defendant's title. He originally alleged title through a purchase from the former lessee; it was only that title which he was, through the amendment, finally permitted to substantiate. It is true, that, to make it good, he was permitted to estop the plaintiff from asserting a paramount title; but that fact does not prevent it from still being true, that the title of the defendant was derived solely from his purchase from the former lessee. The estoppel arose out of, and takes effect through, that purchase. The real owner, standing by and seeing that purchase without asserting his own right, is estopped to deny that the sale conveyed a good title to the purchaser. It

seems to me, therefore, that the proof of the facts constituting the estoppel went merely in support of the original allegation that the defendant acquired title through a purchase from the former lessee. For, although the plaintiff may have been the real owner, and although the legal effect of the estoppel is to work a transfer of his title to the defendant, yet it does so only by giving full effect to the purchase from the former lessee, and preventing the plaintiff from questioning its validity. I think, therefore, that the facts showing the estoppel went merely to support the original allegation as to the source of title, and that the proof was admissible without any amendment. Upon this point I have given only my own views, the decision of the court being, that, assuming the necessity of an amendment, it was, for the reasons previously given, properly allowed.

The question then arises, whether the facts set forth as a counterclaim constitute any proper counterclaim in this action. The action is upon a contract for the breach of covenants in a lease. There were allegations and proof that the plaintiff told the defendant, that if the articles in controversy in the counterclaim were left in the hotel, he would pay for them whenever they "*should be adjudged, by suit or otherwise*," to belong to defendant. The question has occurred, whether, upon this agreement, the counterclaim could be sustained as one arising upon contract, and enforced in this action. Could the adjudication of title, which was made the condition of the promise, be procured for the first time in the very action on the promise itself? This question we have not found it necessary to determine, as we have come to the conclusion that the counterclaim may be sustained upon another ground.

The action was for a breach of the covenants in the lease of a hotel. One of the alleged breaches was, that, instead of surrendering possession, the defendant had carried off sundry articles that belonged to, and were a

part of, the hotel. It appeared that there was a dispute between the parties, at the time of the surrender, as to what the lessee was entitled to remove; or, in other words, as to what the covenant to surrender possession included. The plaintiff claimed that the defendant had carried off things which he ought to have surrendered. The defendant claimed that the plaintiff retained and refused to permit him to remove things to which he was entitled. This, we think, may fairly be said to be a cause of action which, according to the somewhat indefinite language of the statute, "arises out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim." It grew directly out of a misunderstanding between the parties as to their respective rights under that contract. See *Ainsworth v. Bowen*, 9 Wis. 348.

It remains, then, to determine whether there was any error in the rulings. The appellant insists that the seventh and tenth instructions given by the court were erroneous. They were as follows : "*Seventh*. In relation to the property claimed in the counterclaim, I think, if you should find from the testimony that Dutcher claimed that the articles, or any of them, belonged to him at the time of sale, and that the plaintiff assented to it, and that he sold them to defendant, or any of them, with the plaintiff's knowledge and assent, the plaintiff cannot now claim such articles even as fixtures." ' "*Tenth*. If the jury believe, from the evidence, that, at the time of the purchase, and before it was completed, the plaintiff and defendant, together with Mr. Dutcher, went over the house, and the articles of property which Mr. Dutcher claimed the right to sell to the defendant, and not to belong to the house, were pointed out, and the plaintiff made no claim to the same, and stood by and saw the defendant purchase them, the plaintiff is now estopped from setting up any claim to any of the property so pointed out."

This seems to us a very clear and full statement of the facts sufficient to constitute an estoppel, and to be entirely applicable to the evidence in the case. The law embodied in these instructions is nothing more or less than the general familiar proposition, that, where an owner of property stands by and sees a third party sell it as his own, without asserting his own title or giving the purchaser any notice of it, he is estopped as against such purchaser from asserting it afterward. But the appellant's counsel refers to the remark of the chief justice in *Norton v. Kearny*, 10 Wis. 453, to the effect, that an estoppel *in pais* happens where a party makes a statement or admission, either expressly or by implication, *with the intention of influencing the conduct of another*, and that other acts upon the confidence of such statement or admission, and will suffer injury if the party is permitted to deny it." And he then claims that the instructions under consideration were erroneous in omitting to include this element of *intention* on the part of the plaintiff as one of the essential elements of an estoppel.

The language of the chief justice was natural enough, as applicable to the facts in that case, where the plaintiff sought to base an estoppel on an appraisal by one of the defendants, to which he was an entire stranger, and by which he was never influenced. But it was never designed to supersede the old rule, that every man is presumed to intend the natural consequences of his own actions. And this rule would be superseded, if, in addition to the facts required by these instructions, it were held necessary to give any further proof of the party's intention, to constitute an estoppel. Upon those facts, the law, acting upon the presumption that his intention is in accordance with his acts, creates the estoppel. And he could not be permitted to avoid it by raising any question as to what were his secret intentions.

It may have been that the real truth was, that the plaintiff never clearly understood that Dutcher was assuming to sell these articles to the defendant. But the testimony of Dutcher and the defendant would warrant the jury in finding that he did fully understand it. The instructions of the court clearly import that they must so find. And if that was true,—if he did go over the house with Dutcher and the defendant for the very purpose of settling beyond dispute what things Dutcher had a right to sell, and these articles were pointed out as Dutcher's, and he sold them to the defendant, without objection from the plaintiff,— a plainer case of estoppel could not well be imagined. And it would be extraordinary indeed, if, upon such facts, it were necessary to present to the jury any distinct, separate question as to the plaintiff's intention.

So, also, it was not necessary for these instructions to say expressly to the jury that they should find that the defendant was influenced by the silence and assent of the plaintiff, and acted on the faith of it. The facts required to be found necessarily import that.

Nor can it be said that the sale had been consummated before this, and therefore there was no estoppel. It is true that Dutcher and the defendant had fully agreed upon the terms, but no papers had been executed or delivered, and the whole thing was subject to the consent of the plaintiff, and before the final consummation of the bargain these interviews took place. And the instructions expressly require the jury to find that they occurred before the sale was completed.

The defendant's statement, that the plaintiff never in his presence abandoned his claim to the annunciator, evidently means, only, that he never used any express words to that effect. It is clear that he did not intend by this statement, called out on cross-examination, to recall any portion of his former testimony in regard to the circumstances attending the sale. And if that was

true, there was no need of any express abandonment of the plaintiff's claim.

The only other question is, whether there was error in denying the motion for a new trial, on the ground that the verdict was against evidence.    Upon this point I can readily say, that I could not have found the verdict which the jury did. They apparently allowed the plaintiff nothing, although it seems clear from the evidence that some things were taken away by the defendant which he had no right to take, and that there were some breaches of the covenants, for which damages to some extent ought to have been allowed.    But, although it is probable that the jury allowed nothing for these things, we cannot say certainly that such was the case.    There was a wide difference in the testimony as to the value of the annunciator claimed by the defendant.    He himself swore· that it was worth four hundred dollars.    The weight of testimony seems decidedly against any such conclusion; but as it was a question of credibility as between the witnesses, we cannot say that it was not within the province of the jury to adopt his statement as a true one, if they believed it.    If they did so, they may still have allowed the plaintiff considerable damages, which were deducted from the counterclaim, before the balance of the latter was fixed.    The rule upon which this court acts upon this question is, that, where there is any construction of the testimony which the jury were at liberty to give, that sustained the verdict, and the court below has refused a new trial, this court will not interfere upon the mere ground that the verdict is against evidence. That seems to be the case here.    Though the verdict appears to be against the weight of evidence, yet there was evidence which the jury were at liberty to believe, and which, if they believed it, would sustain the finding. The judgment must be affirmed.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was disposed of at the January term, 1870, as follows:

PAINE, J.  It is urged that a rehearing should be granted, upon the ground that the opinion already filed misapprehended the facts in assuming that the acts of the plaintiff, relied on as constituting a conversion, took place at the time of the expiration of the lease and the surrender of the premises.  There was a misapprehension in that respect, as it appears that those acts took place about the 20th of September, whereas the lease did not expire until the first of October.

We have had some doubt whether the motion ought not tó be granted for this reason, but, after a careful examination, have come to the conclusion that this circumstance does not substantially vary the character of the facts, and ought not to affect the result already arrived at.

The question is, whether enough is stated to show a conversión by the plaintiff of the articles mentioned in the defendant's counterclaim.  The argument on the motion for a rehearing seems to assume, that if, at the expiration of the lease, when the lessee was about to exercise his right of removing such property as belonged to him, the lessor should claim certain articles attached to the premises as his own, and forbid the tenant to remove them, it would be a conversion.  This there would seem to be no room to doubt.  It would clearly be such a wrongful assumption of control over the property, and such an interference with the owner's right, as would constitute a conversion.  The only doubt that arises upon the point is, whether the same acts, occurring before the expiration of the lease, and while the tenant remains in the undisturbed possession of the premises, not attempting to exercise his right of removal, would also amount to a conversion.  It may well be, that in general the assertion by one person of a claim to property in the undisturbed possession of another, even though accompanied by a forbiddance of its use, would not be a conversion.  But, without

attempting to settle any general rule upon the subject, we are of the opinion, that where a dispute arises between a landlord and tenant in respect to the ownership of articles, which, if they belong to the tenant with a right of removal, are personal property, but which, if they belong to the landlord, are fixtures and a part of the realty, and the landlord, just before the expiration of the lease, but contemplating that result, and with a view to affect the action of the tenant at such approaching expiration, claims title to such articles and forbids the tenant to remove them, and threatens him with an injunction if he attempts it, the tenant may, on surrendering the premises, leave the articles, and treat the acts of the landlord as a conversion. The fact that these acts occurred a few days before the actual surrender of the premises is not material, so long as they were so near that event, and were intended and understood by both parties to have direct reference to it. A landlord claiming such fixtures may obtain an injunction against an outgoing tenant who threatens to remove them. Gibbons on the Law of Fixtures, p. 70 (11 Law Library). And to make such remedy effectual, he would have to obtain it before the tenant actually removed the fixtures. It is one of the instances where equity would interfere to prevent the threatened wrong. Such being the case, the landlord being in a position, by reason of the peculiar character of the property, to enforce his threat, if he will take the responsibility of forbidding the tenant to remove such articles at the expiration of a lease then about to expire, under threat of an injunction, this should fairly be regarded as such an assumption of control over the property, and such an interference with the tenant's right, as to amount to a conversion. For, if the property, although consisting of fixtures, really belongs to the tenant, and he has the right of removal, a wrongful prevention of the exercise of that right is a conversion ; for, as between landlord

and tenant, it is personal property. *Ford v. Cobb*, 20 N. Y. 344; *The State v. Bonham*, 18 Ind. 231.

It is probable that counsel, in stating the counterclaim, designed to rely upon the alleged agreement which it discloses. But it sufficiently shows the facts constituting the wrongful interference with the right of the tenant. It alleges that the plaintiff asserted his own title, and forbade the defendant to remove the property; and if, in law, this is sufficient to sustain an action for the tort, we must so hold, though stated with a view to show a different cause of action.

And it may fairly be doubted whether this alleged agreement was capable of any practical enforcement. The very condition of the promise of the plaintiff to pay for the property was, that the defendant should first obtain an adjudication that it belonged to him. The appellant's counsel contended — and it would seem difficult to hold otherwise — that no action could be maintained on the promise, as such, without showing that such an adjudication had first been obtained. But such an adjudication could only be obtained in some action brought to assert the tenant's right to the property; and whenever, in such suit, he obtained an adjudication of title, he would also obtain the appropriate judgment for relief, which would supersede the necessity of any further action on the plaintiff's promise.

This so-called agreement seems, therefore, to have amounted to nothing. It expressly refers the whole difficulty for adjustment to some suit to be brought by the tenant upon his original rights, wholly independent of this agreement itself. It does not profess to modify or enlarge the rights or obligations of either. It was as though one engaged in committing a trespass, on being ordered to desist, should say: "Let me alone, and when you recover a judgment against me for the damages, I will pay it." The fair construction of it, therefore, is, that the parties contemplated that the tenant should

resort to any action warranted by the facts to test his right to the property, and that an action for a conversion, in assuming control over it by the plaintiff, and forbidding the defendant to remove it, would be such an action. We have thus alluded to this agreement because, if it had furnished any new basis for the adjustment of the rights of the parties, in which their former rights had become merged, it might have been impossible to sustain the view we have taken of this counterclaim. But as it furnishes no such basis, as it expressly referred the whole matter to a suit, to stand or fall entirely independent of its provisions, it does not stand in the way of our conclusion, that, upon the facts, the defendant had a good cause of action for a conversion, and that, upon the grounds stated in the former opinion, it may be sustained as a counterclaim in this suit.

*By the Court.*—The motion for a rehearing is denied.