ADAMS, Respondent, vs. MAXCY, Appellant.

*January 11—February 6, 1934.*

242

■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

For the appellant there was a brief by *Olin & Butler* and *R. M. Rieser,* all of Madison, and oral argument by *Mr. Rieser.*

For the respondent there was a brief by *Barber, Keefe, Patri & Horwitz,* attorneys, and *W. Mead Stillman* of counsel, all of Oshkosh, and oral argument by *Mr. Frank B. Keefe* and *Mr. Stillman.*

FAIRCHILD, J. The finding of the jury that there was no provision made by appellant under which the stock in his possession could be sold at any time when in their judgment respondent and his co-owner A. W. Golz saw fit to sell, is not sustained by the evidence. This leaves respondent without grounds on which to base his claim that the stock was converted by the appellant to his own use. The arrangement under which that opportunity was afforded respondent and Golz appears from the testimony of the parties and is abundantly corroborated by their acts. Respondent and Golz

were employees of appellant. They learned of a proposed consolidation of the Wisconsin Parts Company and the Timken-Detroit Axle Company. They knew appellant had stock in the Wisconsin Parts Company and they negotiated for and purchased twenty-five shares of stock of that company, giving to appellant their note of $1,700 in payment therefor. Respondent and Golz were trusted employees of the appellant, occupied the same offices with him, had access to all the memoranda and the certificates of stock in his possession both before and after the merger of the two companies. The twenty-five shares certificate originally purchased by respondent and Golz was indorsed by appellant and turned over to them. It was returned by them to appellant after the merger had been effected with the request that he have it transferred or converted into Timken-Detroit Axle stock. Certificates were issued for all the stock sent in by appellant in the denomination of one hundred shares each, and all in his name. A number of these one hundred share certificates were indorsed by appellant and, as he testified, placed in the custody of both respondent and Golz with the understanding that when they wanted to sell their stock they were to take a certificate for one hundred shares, sell it, and account to him for the difference. Golz testified:

"He gave me the certificates indorsed in blank to be put in this pigeonhole and if any of them were sold to take them out, or if we wanted to sell one to take a hundred share certificate and sell it and give him whatever he was entitled to after cleaning up our note. I told Mr. Adams about it when I learned about it in April, 1929. Walter (respondent) knew everything that I knew in connection with this stock."

The respondent testified with relation to the demand alleged to have been made on May 3d, that he talked with appellant about selling, and when asked: "Had you ever asked Mr. Maxcy to put in an order to sell for you?" he

replied, "Well, I talked to him about it and he said he didn't have our exact amount but he would have to sell one hundred shares and give us credit." The three men involved in this matter were associating daily, two of them as employees, the other as an employer. The utmost confidence in each other seemed to exist and there was not much thought given to the possibility of one of them taking advantage of the other. When the stock resulting from the merger was returned, all parties were fully advised, and it seems certain from the evidence that the respondent and his co-owner Golz had sufficient control over and possession of the stock with sufficient authority emanating from the appellant to enable them to make a sale of the stock in which they were interested at any time. The claimed demand of .May 3d does not amount to more than a discussion of the advisability of respondent and Golz then selling their stock. Respondent did testify that he did not know that Golz had authority to sell the stock, but he also testifies that after April 1, 1929, he spoke to appellant a number of times about the stock and testified that appellant said: "He would have to give us one hundred shares and we could give him credit for the difference."

It also appears that there was a reason for having the stock issued in one hundred share lots. It was testified that:

"When sold in less than one hundred shares lots the amount realized would be one-eighth of a point less than the market price on that day. It is the same with buying. . . . By that arrangement by permitting Mr. Maxcy to sell one hundred shares of stock we would have realized one-eighth of a point more for the fifty-six shares than we would have realized if we had just sold the fifty-six shares."

There was testimony also that the reason for permitting the original twenty-five shares of Wisconsin Parts stock to continue in appellant's name was to save the cost incident to transfer and the expense of a reissue. With all these facts

disclosed, the answer of the jury to the fourth question must be changed from "No" to "Yes," and a question as to the consent of the respondent to the arrangement must be answered "Yes."

In 26 Ruling Case Law, p. 1098, § 3, "conversion" is defined as follows:

"Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein, such as a tortious taking of another's chattels, or any wrongful exercise or assumption of authority, personally or by procurement, over another's goods, depriving him of the possession, permanently or for an indefinite time."

Circumstances do not exist in the present case of a nature sufficient to bring appellant's acts within this definition, and respondent must fail on this account. Consequently, it is unnecessary for us to consider the claim that the complaint is defective because of neglect to join Golz as a party plaintiff, or the effect upon respondent's rights of the acquiescence of Golz in the appellant's course of action.

*By the Court.*—Judgment reversed. Cause remanded with direction to answer questions in accordance with this opinion and to enter judgment in defendant's favor dismissing the complaint.