SCHARA, Respondent, v. THIEDE, Appellant: SINGLETON
and another, Defendants.

*No. 284. Submitted under sec. (Rule) 251.54 March 29, 1973.—
Decided April 20, 1973.*
(Also reported in 206 N. W. 2d 129.)

490

492

For the appellant the cause was submitted on the briefs of *J. E. Richter* of Fond du Lac.

For the respondent the cause was submitted on the brief of *Colwin, Ondrasek & Petri* of Fond du Lac.

HEFFERNAN, J. It was apparent to the trial judge, from the evidence adduced at the hearing, that the parties had in fact entered into an illegal contract. Nevertheless, he concluded that the illegality of the contract did not constitute a defense against Schara's claim. The contract on its face discloses no illegality. It provides merely for the employment of Schara as the manager of Thiede's tavern until June 30, 1970, with Schara to receive a one-year lease of the premises thereafter on the condition that the premises remain licensed to operate as a tavern. Taken literally, the contract was legal, and a breach of its conditions by either party could render the other liable for damages.

Despite the facial legality of an agreement, parol evidence is admissible to show that a writing valid on its face is a mere cover for an illegal transaction. *Miller v. Anderson* (1924), 183 Wis. 163, 169, 196 N. W. 869; *Manufacturers & Merchants Inspection Bureau v. Everwear Hosiery Co.* (1913), 152 Wis. 73, 138 N. W. 624; Corbin, *Contracts* (hornbook ed., 1952), p. 536.

The evidence adduced at trial established that the written contract had little similarity to the parties' actual agreement as they understood it. Both Schara and Thiede, as well as Glanz, testified that there was never any intention that the operator of the tavern act as "manager" for Thiede. On the contrary, the parties contemplated that Glanz, and subsequently Schara, would operate the tavern as his own business and that the agreement was a lease and not a contract of employment.

While they denied that they knew that the arrangement was illegal, all parties to the contract recognized that the agreement was a subterfuge to cover the fact that both Glanz and Schara were operating the tavern without a proper license. The agreement, as understood by the parties, was in violation of secs. 176.04 and 176.05, Stats., insofar as it involved the operation of the tavern by either lessee without having first obtained a proper license.

Thiede relies upon the illegality of the contract to defeat Schara's claim for damages, contending that, even though he had breached the contract, it was so tainted with illegality that it would not support a suit for equitable relief or for damages. The principle upon which he relies was recognized in this state as early as *Swartzer v. Gillett* (1849), 2 Pinney 238, 1 Chandler 207. *Swartzer*, citing earlier cases, states at page 240:

" 'The suppression of illegal contracts is far more likely, in general, to be accomplished, by leaving the

parties without remedy against each other, and by thus introducing a preventive check, naturally connected with a want of confidence and a sole reliance upon personal honor.' "

" 'The law leaves the parties to such a contract just as it found them.' "

More recently, in *Venisek v. Draski* (1967), 35 Wis. 2d 38, 50, 150 N. W. 2d 347, this court stated:

"The general rule is that both at law and in equity a court will not aid either party to an illegal agreement, whether executory or executed, but leaves the parties where it finds them."

Schara does not deny the illegality of the agreement, but argues that the illegal provisions are severable and that the remainder of the agreement, including Thiede's promise to execute a one-year lease on July 1, 1970, is enforceable. The principle of severability may be applicable even though a portion of a contract may be tainted with illegality. The following rule appears in Restatement, 2 *Contracts,* pp. 1119, 1120, sec. 603, and was approved by this court in *Simenstad v. Hagen* (1964), 22 Wis. 2d 653, 661, 126 N. W. 2d 529:

" 'A bargain that is illegal only because of a promise or a provision for a condition, disregard of which will not defeat the primary purpose of the bargain, can be enforced with the omission of the illegal portion by a party to the bargain who is not guilty of serious moral turpitude unless this result is prohibited by statute. . . .' "

In *Rietbrock v. Studds* (1952), 262 Wis. 5, 8b, 53 N. W. 2d 712, 54 N. W. 2d 899, this court, citing 17 C. J. S., *Contracts,* p. 663, sec. 276, stated, " 'Where one can establish his case without reliance on an illegal transaction, the illegality will not bar his recovery.' "

The rule, however, gives no comfort to the plaintiff in this case, for his right to the one-year lease was

expressly conditioned upon his faithful performance as "manager" pursuant to the illegal agreement. Schara clearly relies upon the past performance of an illegal transaction and, accordingly, cannot expect relief from the courts.

The resolution of this case is governed by *Sponholz v. Meyer* (1955), 270 Wis. 288, 70 N. W. 2d 619, and *Brill v. Salzwedel* (1940), 235 Wis. 551, 292 N. W. 908. In both of these cases, the parties had entered into a partnership for the operation of a bar. In both cases, the agreement provided that only one of the partners was to obtain the license required by law, despite the statutory requirement that the names of all partners be submitted to the licensing authorities. The court found that such an arrangement to circumvent the licensing law was illegal, and in both cases denied recovery to a partner who sued for breach of the partnership agreement. Both *Sponholz* and *Brill* point out the public policy factors which compel a court to hold illegal any contract which has as its purpose the concealment from the public and the licensing authority of the identity of the true operator of an establishment for the sale of liquor.

We conclude, therefore, that the contract herein was so permeated with illegality that, in accordance with the principles set forth in *Swartzer v. Gillett, supra,* page 240, the parties to the contract should be left by the court "just as it found them." *Swartzer* also points out that parties to an illegal contract:

" '[M]ust not expect that a judicial tribunal will degrade itself by an exertion of its powers to shift the loss from one to the other, or to equalize the benefits or burthens which may have resulted from the violation . . . of law.' "

Since we find that the contract was illegal and not severable, we need not consider the plaintiff's allegations

and his proof which attempted to demonstrate a breach of the contract by the defendant. It is sufficient to point out that the undisputed facts show that Schara was denied a liquor license not because of any acts of Thiede but because of his own inability to meet the standards required by the licensing authority. It also appears from the record that Thiede did not make a license application until after he was told by the city clerk that Schara would not get a license and that he, Thiede, should submit his own application if he wanted to keep the tavern licensed. Accordingly, even were we to find the entire contract not to be permeated with illegality, any finding that Thiede breached the conditions of the lease or agreement would be contrary to the great weight and clear preponderance of the evidence.

Although the judgment did not allocate separate damages for the alleged conversion of the plaintiff's personal property, it is apparent that some portion was the result of the trial judge's conclusion that Thiede had illegally withheld personal property from Schara when he changed the locks on the tavern premises. The alleged cause of action is for conversion. Conversion is defined in *Adams v. Maxcy* (1934), 214 Wis. 240, 245, 252 N. W. 598:

> " 'Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein, such as a tortious taking of another's chattels, or any wrongful exercise or assumption of authority, personally or by procurement, over another's goods, depriving him of the possession, permanently or for an indefinite time.' "

The undisputed facts show that Thiede's dominion over Schara's property occurred when he changed the locks on the door and excluded Schara from the premises. We have pointed out above that, as of July 1, 1970, any relationship of landlord and tenant that thereto-

fore existed between Thiede and Schara was terminated. *Vilas v. Mason* (1870), 25 Wis. 310, 326, points out that there may be a conversion of property if, upon the termination of the lease, the landlord prohibits the tenant from exercising his right to remove his property from the premises. In this case, the record is barren of any evidence showing that Schara demanded and was refused the right to remove his own belongings. On the contrary, there was testimony that in early July, Schara came to the tavern and asked to be let in to pick up his belongings. Thiede testified that Schara was permitted to enter and allowed to take a camera and whatever else he wanted. Schara admitted that he never made any further attempt to secure any property that allegedly belonged to him. Under these circumstances, Schara failed to prove a cause of action for conversion.

In the judgment, Thiede was granted certain offsets as a result of his assumption of various obligations under the contract. The provisions of the contract under which he was granted these offsets was subject to the infirmities of the illegal contract and, accordingly, that portion of the judgment granting any offsets to Thiede must also be set aside.

*By the Court.*—Judgment reversed; no costs allowed.