Edward L. KOZAK and Charlotte Kozak, Plaintiffs-Appellants,

v.

UNITED STATES FIDELITY & GUARANTY COMPANY, Defendant-Respondent.

Court of Appeals

No. 83–1936. Submitted on briefs July 6, 1984.— Decided August 22, 1984.
(Also reported in 355 N.W.2d 362.)

464

For the appellants, the cause was submitted on the brief of *Conrad J. Shearer,* of *Shearer & Shearer,* of Kenosha.

For the respondent, the cause was submitted on the brief of *Thomas R. Schrimpf,* of *Kluwin, Dunphy & Hankin,* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Robert W. Hansen, Reserve Judge.

SCOTT, C.J.  Charlotte and Edward L. Kozak appeal from a judgment dismissing their claim against the United States Fidelity and Guaranty Company (USF&G) on the merits. The issue is whether an exclusionary clause excepting "wrongful conversion and embezzlement" from an insurance policy covering loss by theft is ambiguous as applied to a farm tenant who made an

unauthorized sale of cattle and appropriated the proceeds for his own use. Because we find that the exclusionary clause is ambiguous, we conclude that it does not defeat the Kozaks' claim under the policy. Accordingly, we reverse.

Charlotte and Edward L. Kozak (Kozaks) are the owners of a farm in East Troy, Wisconsin. They entered into a livestock share lease with Eugene A. Nelson providing that Nelson live and work on the farm and providing for joint ownership of fifty-six dairy cattle. The lease specifically provided that any purchase or sale of the jointly owned property was to be made by mutual agreement. Without the knowledge or agreement of the Kozaks, Nelson sold a total of forty-nine cattle and appropriated the proceeds for his own use.

The Kozaks filed a claim for theft loss under a Farmowners-Ranchowners Policy issued by USF&G. USF&G denied liability and moved for summary judgment based on the following portion of the policy:

## PERILS INSURED AGAINST

This policy under this form insures against direct loss to the property covered by the following perils, subject to the conditions herein and of the policy of which this form is made a part.

. . . .

9. THEFT, meaning any act of stealing or attempt thereat. With respect to this peril, this policy does not apply to loss:

. . . .

c. by wrongful conversion and embezzlement; . . . .

USF&G's motion for summary judgment was denied.[1] A trial was held to the court, and judgment was entered

[1] Judge Michael S. Fisher of the circuit court for Kenosha county rendered the decision on the motion for summary judgment.

dismissing the Kozaks' claim on the merits.[2] The Kozaks appeal.

We have not found any Wisconsin cases that construe the policy terms at issue in this case under similar facts.[3] In our review of this case, therefore, we are guided by the general principles of insurance policy construction as they are espoused in the case law.

The construction of words and clauses in an insurance policy is a question of law for the court. *Katze v. Randolph & Scott Mutual Fire Insurance Co.,* 116 Wis. 2d 206, 212, 341 N.W.2d 689, 691 (1984). Appellate courts owe no deference to the trial court's resolution of issues of law. *Behnke v. Behnke,* 103 Wis. 2d 449, 452, 309 N.W.2d 21, 22 (Ct. App. 1981).

In interpreting an insurance contract, our objective is to give effect to the intentions of the parties. *Garriguenc v. Love,* 67 Wis. 2d 130, 134, 226 N.W.2d 414, 417 (1975). The words of the insurance contract are to be construed according to the principle that the test is not what the insurer intended the words to mean but what a reasonable person in the position of the insured

[2] The trial was held before Judge William U. Zievers. The parties stipulated to the statement of facts as presented in the defendant's trial brief, that the record consisted of the pleadings and deposition of Charlotte Kozak, the insurance policy, Judge Fisher's decision on the motion for summary judgment and that the plaintiffs' damages exceeded the $20,000 policy limit.

[3] The Nebraska supreme court case of *Raff v. Farm Bureau Insurance Co. of Nebraska,* 149 N.W.2d 52 (Neb. 1967), which is cited by USF&G and which was relied on by the trial court in its decision to dismiss the Kozaks' claim is not controlling here. While the court in *Raff* defined the terms "wrongful conversion and embezzlement," the issue in the case centered on whether there was a theft, not whether the theft constituted "wrongful conversion and embezzlement." The meaning of the terms "wrongful conversion and embezzlement" was therefore not at issue in the case.

would have understood the words to mean. *Id.* at 134–35, 226 N.W.2d at 417. We construe all provisions tending to limit liability most strongly against the insurer. *Wisconsin Builders, Inc. v. General Insurance Co. of America,* 65 Wis. 2d 91, 103, 221 N.W.2d 832, 838 (1974). Whether an ambiguity in an insurance policy exists depends on the meaning that the term or provision would have to a reasonable person of ordinary intelligence. *Herwig v. Enerson & Eggen,* 98 Wis. 2d 38, 40, 295 N.W. 2d 201, 203 (Ct. App. 1980), *affd,* 101 Wis. 2d 170, 303 N.W.2d 669 (1981). An ambiguity exists when a word or phrase is reasonably susceptible to more than one construction. *Garriguenc,* 67 Wis. 2d at 135, 226 N.W.2d at 417.

The dispute here centers around the terms "embezzlement and wrongful conversion" found in an exclusionary clause in the insurance policy issued by USF&G. The Kozaks contend that a lay person would interpret Nelson's conduct as theft and that a lay person would not interpret Nelson's conduct to be excepted from coverage by the exclusionary clause because the terms "wrongful conversion and embezzlement" are ambiguous. We agree.

First, while USF&G may have fully intended that Nelson's conduct be excluded from coverage, USF&G's intent is not controlling in construing the words of the policy. Rather, we must construe the words of the policy in terms of what a reasonable person in the Kozaks' position would have understood those words to mean. *See, Garriguenc,* 67 Wis. 2d at 134–35, 226 N.W.2d at 417. Consequently, we do not charge the Kozaks with the knowledge that USF&G intended to exclude coverage for loss by the theft committed by their farm tenant. The policy does not specifically exclude loss by theft committed by a farm tenant, employee or bailee. USF&G, as the drafter of the policy, had the full opportunity to

explain its terms and to thereby specifically exclude conduct such as Nelson's from coverage. It did not. Instead, the terms "wrongful conversion and embezzlement" were left undefined in the policy.

Second, the ordinary and commonly accepted meanings of the terms "wrongful conversion and embezzlement" are not sufficient to distinguish "wrongful conversion and embezzlement" from theft in general. In determining the ordinary and commonly accepted meaning of the terms used in an insurance policy, it is appropriate to look to definitions in a recognized dictionary. *Lawver v. Boling,* 71 Wis. 2d 408, 414, 238 N.W.2d 514, 517 (1976). For this purpose, we look to Webster's Third New International Dictionary (1976).

According to Webster's, the word "convert" means "change" or "transformation," (*id.* at 499), and the term "wrongful" means "unjust" or "unlawful." *Id.* at 2642. A reasonable person of ordinary intelligence may attribute numerous different meanings to the term "wrongful conversion" in accordance with the dictionary definitions. Similarly, the word "embezzlement" is defined to mean "fraudulent appropriation of property by a person to whom it has been entrusted (as of an employer's money by his clerk or of public funds by the officer in charge)." *Id.* at 739. As the examples given in Webster's make apparent, "embezzlement" is commonly used to describe the theft of money by an employee. Therefore, we agree with the Kozaks' contention that a reasonable person of ordinary intelligence who purchases an insurance policy covering theft would consider conduct such as Nelson's covered under the policy. The ordinary and commonly accepted meanings of the terms "wrongful conversion and embezzlement" are not

specific enough to distinguish these acts from theft in general in the mind of a reasonable person.

Third, neither the Wisconsin statutes nor a Wisconsin supreme court case defining "conversion" distinguish the acts of "conversion" and "embezzlement" from theft in general.

Theft, as defined in sec. 943.20, Stats., includes the following:

Theft. (1) ACTS. Whoever does any of the following may be penalized as provided in sub. (3) :

(a) Intentionally takes and carries away, uses, transfers, conceals, or retains possession of movable property of another without his consent and with intent to deprive the owner permanently of possession of such property.

(b) By virtue of his office, business or employment, or as trustee or bailee, having possession or custody of money or of a negotiable security, instrument, paper or other negotiable writing of another, intentionally uses, transfers, conceals, or retains possession of such money, security, instrument, paper or writing without the owner's consent, contrary to his authority, and with intent to convert to his own use or to the use of any other person except the owner. A refusal to deliver any money or a negotiable security, instrument, paper or other negotiable writing, which is in his possession or custody by virtue of his office, business or employment, or as trustee or bailee, upon demand of the person entitled to receive it, or as required by law, is prima facie evidence of an intent to convert to his own use within the meaning of this paragraph.

(c) Having a legal interest in movable property, intentionally and without consent, takes such property out of the possession of a pledgee or other person having a superior right of possession, with intent thereby to deprive the pledgee or other person permanently of the possession of such property.

The acts of conversion and embezzlement are not separately defined. A reasonable person could not use this

definition to distinguish the acts of "wrongful conversion and embezzlement" from theft in general. Therefore, the statutory definition of theft leaves the terms "wrongful conversion and embezzlement" ambiguous as well.

In the case of *Schara v. Thiede*, 58 Wis. 2d 489, 206 N.W.2d 129 (1973), the supreme court defined the term "conversion" as:

> " 'Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein, such as a tortious taking of another's chattels, or any wrongful exercise or assumption of authority, personally or by procurement, over another's goods, depriving him of the possession, permanently or for an indefinite time.' "

*Id.* at 497, 206 N.W.2d at 133, quoting *Adams v. Maxcy*, 214 Wis. 240, 245, 252 N.W. 598, 600 (1934). Our reading of this definition of "conversion" does not distinguish "conversion" from theft. A reasonable person, therefore, would be left equally confused. Consequently, we conclude that the legal meaning of the terms "wrongful conversion and embezzlement" is also ambiguous.

Finally, as was the trial court at the summary judgment stage of the proceedings, we are persuaded by the reasoning in the case of *Kirby v. Springfield Fire Insurance Co.*, 216 F. Supp. 121 (N.D. Ill. 1963). There, under similar facts, the court held that the exclusion of "wrongful conversion and embezzlement" was ambiguous in a policy covering loss by theft. The court determined that a reasonable person of ordinary intelligence would not interpret the terms "wrongful conversion and embezzlement" in an insurance policy covering loss by theft to exclude loss resulting when a farm employee makes an unauthorized sale of animals and appropriates the proceeds for his own use. *Id.* at 122–23.

We therefore conclude that the exclusionary clause excepting "wrongful conversion and embezzlement" from coverage in an insurance policy for loss by theft is ambiguous as applied to the facts in this case. Accordingly, we conclude that the Kozaks' loss is covered under the insurance policy issued by USF&G.

*By the Court.*—Judgment reversed and cause remanded with directions to enter judgment for the plaintiffs.