Zoe TEMPELIS, a/k/a Zoe Tempeli and his wife, Sally Tempelis, Plaintiffs-Appellants,

v.

AETNA CASUALTY & SURETY COMPANY, Defendant-Respondent.†

Court of Appeals

*No. 90-2525. Submitted on briefs June 10, 1991.—Decided July 23, 1991.*

(Also reported in 473 N.W.2d 549.)

†Petition to review granted.

17

18

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *James L. Cirilli* of *Peterson, Cirilli, Gondik & Moldenhauer* of Superior.

On behalf of the defendant-respondent, the cause was submitted on the briefs of *Robert Terhaar* of *Cosgrove, Flynn, Gaskins & Haskell* of Minneapolis.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   Zoe and Sally Tempelis appeal a judgment dismissing their claim against Aetna Casualty &

Surety Company for fire insurance coverage. The trial court dismissed the claim after a jury finding that the Tempelises made a material misrepresentation on the proof of loss form they filed with Aetna after fire damaged their home and its contents.

The Tempelises contend that the trial court erred by eliminating the element of reliance from its jury instruction on the material misrepresentation. Their argument is predicated on language in *Northwestern Nat'l Ins. Co. v. Nemetz*, 135 Wis. 2d 245, 262, 400 N.W.2d 33, 40 (Ct. App. 1986). Because we conclude that the dicta in *Nemetz* incorrectly adds the element of reliance to the insurer's burden of proof with respect to a material misrepresentation in a proof of loss form, we reject the Tempelises' claim. We reverse the trial court's dismissal, however, on another ground: The insurance policy purchased by the Tempelises does not provide for denial of coverage upon a material misrepresentation in the proof of loss form.

## MISREPRESENTATIONS IN THE PROOF OF LOSS: IS RELIANCE AN ELEMENT?

In *Nemetz,* 135 Wis. 2d at 262, 400 N.W.2d at 40, we stated:

> Auto-Owners argues that Hazel Nemetz voided its policy because she made a material misrepresentation on a proof of loss form. The record shows that Hazel witnessed her husband's hospital room statement where he admitted pouring gasoline in the tavern immediately before the explosion and fire. Auto-Owners argues that when Hazel later signed a proof of loss form on which she stated the origin of the fire was unknown, she violated the policy term prohibiting an insured person from intentionally concealing

21

or misrepresenting any material fact relating to the insurance. We disagree.

An insurer must show materiality in order to avoid coverage because of misrepresentation. *See Nolden v. Mutual Benefit Life Insurance Co.,* 80 Wis. 2d 353, 360, 259 N.W.2d 75, 78 (1977); sec. 631.11(2), Stats. A misrepresentation is not material if it did not invoke the insurer's reliance. *See* sec. 631.11(2), Stats. The materiality of a misrepresentation is a question of fact that must be presented to the jury. *Nolden,* 80 Wis. 2d at 360, 259 N.W.2d at 78. Auto-Owners did not argue that it relied on Hazel's statement. The insurer knew of Walter's admission as well as the investigators' theories as to the cause of the blaze.

In *Nolden,* the supreme court addressed a misrepresentation in an application for insurance. The *Nolden* court held that such a misrepresentation was not material if it did not invoke the insurer's reliance, based on the language in the predecessor statute to sec. 631.11(2).

In *Nemetz,* the real ground of our holding was that Hazel's statement on the proof of loss that the cause of the fire was "unknown" could not have been material where "[t]he insurer knew of Walter's admission as well as the investigators' theories as to the cause of the blaze." *Id.* at 262, 400 N.W.2d at 40. Other courts have similarly ruled that a misrepresentation as to the cause of a fire where all parties are aware of the same facts with respect to causation is not material as a matter of law. *See Hyland v. Millers Nat'l Ins. Co.,* 58 F.2d 1003, 1005-06 (N.D. Cal. 1932), *aff'd,* 91 F.2d 735 (9th Cir. 1937) (where evidence of arson was equally well known to both the insured and the insurer, and the insured stated on the proof of loss form that the cause of the fire was "unknown," a material misrepresentation had not

been established); *see also Miller & Dobrin Furniture Co. v. Camden Fire Ins. Co.,* 150 A.2d 276, 286 (N.J. Super. Ct. Law Div. 1959) (where corporation did not state on its proof of loss form that one of its officers had been charged with arson, but insurer's agent was at the store on the day of the fire and had the opportunity to review the facts with police and fire officials, the use of the term "undetermined" on the proof of loss form to describe causation "cannot be considered as an attempt to conceal or misrepresent.").

The discussion of the element of reliance in *Nemetz* was dicta, and never addressed whether the statute interpreted in *Nolden,* now sec. 631.11(2), Stats., applied to both material misrepresentations in the application and material misrepresentations in the proof of loss. Aetna now poses this interpretive question and asks us to determine whether the "misrepresentation or breach of . . . affirmative warranty" requiring proof of an insurer's reliance referenced in sec. 631.11(2)[1] applies to statements made in the proof of loss.

Prior to the enactment of sec. 631.11(2), Stats., the general rule in Wisconsin where there was an allegation

---

[1]Section 631.11 provides, in pertinent part:

Representations, warranties and conditions. (1) Entire Contract. (a) Signed application for policy. No statement, representation or warranty made by any person in the negotiation for an insurance contract affects the insurer's obligations under the policy unless it is stated in the policy, or in a written application signed by such person, a copy of which is made a part of the policy by attachment or endorsement.

. . ..

(2) Effect of Misrepresentation or Breach of Affirmative Warranty. No misrepresentation or breach of affirmative warranty affects the insurer's obligations under the policy unless the insurer relies on it and it is either material or is made with intent to deceive, or unless the fact misrepresented or falsely warranted contributes to the loss.

that proofs of loss were false and fraudulent was that reliance was not an element of the defense. *Stebane Nash Co. v. Campbellsport Mut. Ins. Co.,* 27 Wis. 2d 112, 124, 133 N.W.2d 737, 745 (1965) ("Actual damage to the insurer is not required."). If sec. 631.11(2) was not intended *to apply to proofs of loss, but only to applica-tions,* that general rule still applies.

The threshold question to be addressed when con-struing statutes is whether the language of the statute is ambiguous. *Standard Theatres v. DOT,* 118 Wis. 2d 730, 740, 349 N.W.2d 661, 667 (1984). A statute is ambiguous if reasonable persons could disagree as to its meaning. *Id.* We conclude that sec. 631.11(2), Stats., is ambiguous, in that its language could be understood to apply to any misrepresentation made to an insurer, or only to misrep-resentations made in the negotiation and/or application for insurance.

When a statute is ambiguous, we must determine the intent of the legislature by examining the statute's scope, history, context, subject matter and objective. *Sheely v. DHSS,* 150 Wis. 2d 320, 335, 442 N.W.2d 1, 8 (1989). The comments of legislative advisory committees are relevant to the construction of a statute. *State v. Stanfield,* 105 Wis. 2d 553, 561, 314 N.W.2d 339, 343 (1982).

The legislative committee comment[2] is a helpful guide to the legislative intent in adopting sec. 631.11(2), Stats.

> Sub. (2) carefully balances insurer's and insured's interests. Contribution to the loss is suffi-

---

[2]Section 41, ch. 375, Laws of 1975.

cient for avoidance. Insurer reliance plus either materiality or fraud is also sufficient. Nothing else will do.
. . . It may also be argued that a fraudulent misrepresentation should be no defense *if it is not material, i.e., would not have affected the underwriting decision of the insurer (or of a "reasonable" insurer, if that is the test of materiality).*

. . ..

This draft seeks a better balance, protecting the insurer against fraud and violations of conditions *that would preclude acceptance of the risk, and giving it access to the information it needs to underwrite,* without giving it arbitrary power over the insured through application of the harsh common law doctrines.

Legislative Committee Comment—1975, Wis. Stat. Ann. sec. 631.11 (West 1980) (emphasis added). Clearly, the committee's recommendations were aimed at misrepresentations and affirmative warranties made as part of the negotiation for, or in the application for, an insurance policy.[3] Misrepresentations made in the proof of loss have no effect on an insurer's decision to underwrite the risk in the first instance.

A survey of other jurisdictions to determine whether reliance is considered an element of an insurer's defense

---

[3]*See also* 7 Couch on Insurance 2d § 35:2 (1985), which defines a representation as "an oral or written statement which *precedes the contract of insurance,* and is no part thereof unless it is otherwise stipulated, made by the insured or his authorized agent to the insurer or his authorized agent, and *relates to facts necessary to enable the insurer to decide whether he will accept the risk, and at what premium,"* and 7 Couch, *supra,* at § 35:5, which states that "representations, while they precede the contract, are collateral thereto and not necessarily a part thereof, whereas warranties *actually are and must be a part of the contract itself."* (Emphasis added.)

of material misrepresentation in the proof of loss indicates that only Nebraska requires proof of reliance. In *Omaha Paper Stock Co. v. California Union Ins. Co.,* 262 N.W.2d 175, 179 (Neb. 1978), the Nebraska Supreme Court noted that the rule in its state was that "reliance and resulting injury are essential elements of materiality . . . it must appear that the defendant acted upon such false statements, or was in some manner prejudiced or affected by them." The *Omaha Paper* court applied this rule even where false statements were made in a ledger book supporting the insured's proof of loss. The *Omaha Paper* holding has been strongly criticized by at least one commentator. *See* 13A Couch on Insurance 2d § 49A:63 (1982) ("Such a position is untenable as the insured nevertheless intended to defraud the insurer and as such must be barred from any recovery as would be consistent with the policy language respecting fraud and false swearing.").

In contrast, in *Rayis v. Shelby Mut. Ins. Co.,* 264 N.W.2d 5 (Mich. Ct. App. 1978), the Michigan Appellate Court upheld the trial court's decision to separate the insurer's allegations of fraud into fraudulent procurement and fraudulent proof of loss. "Fraudulent procurement has all the normal fraud elements, while fraudulent proof of loss, also called "false swearing," does not have justifiable reliance as one of its elements . . . the element of justifiable reliance is what distinguishes fraudulent procurement from fraudulent proof of loss." *Id.* at 7–8 (citing *Campbell v. Great Lakes Ins. Co.,* 200 N.W. 457 (Mich. 1924), and *Bernadich v. Bernadich,* 283 N.W. 5 (Mich. 1938)). The *Rayis* decision was cited for this proposition of law by two federal appellate courts in *Kelly's Auto Parts v. Boughton,* 809 F.2d 1247, 1256 (6th Cir. 1987) (interpreting Michigan law), and *Vitale v.*

*Aetna Cas. & Surety Co.,* 814 F.2d 1242, 1251 (8th Cir. 1987) (interpreting Missouri law).

We are persuaded by the reasoning of the *Rayis* court and conclude that reliance is not an element required to establish material misrepresentations in a proof of loss. We hold that the language of sec. 631.11(2), Stats., applies a reliance requirement only to misrepresentations made in the negotiation or application for insurance.

As indicated earlier, however, while an insurer need not prove that it relied on a material misrepresentation in a proof of loss, it must still establish that the misrepresentation was material. We note that in certain situations it may be difficult to distinguish between reliance and materiality. For instance, if the insurer did not rely on the misrepresentation as the case in *Nemetz,* the misrepresentation becomes immaterial. However, in proof of loss cases, the central issue is materiality. Reliance may become part of the inquiry depending on the factual situation. Because we ground our holding here on the absence of contract language entitling Aetna to avoid its obligations for material misrepresentations in the proof of loss, we do not address whether the Tempelises made material misrepresentations.

## CONTRACT INTERPRETATION

Fraud and false swearing by the insured made in the proof of loss will render the policy void if the policy provides for such a result from such conduct. *Folk v. National Ben Franklin Ins. Co.,* 359 N.E.2d 1056, 1057 (Ill. App. 1976); *see also Stebane Nash,* 27 Wis. 2d at 123, 133 N.W.2d at 744. As a threshold question, then, we must determine whether the policy here provided

27

that fraud and false swearing by the insured in the proof of loss will render the policy void.

The Tempelises did not pose this threshold issue on appeal. But where the provisions of a contract are uncontested, the supreme court has ruled that it can undertake a sua sponte consideration of the legality of a contract when the illegality is apparent on the face of the contract and when the issue posed is of a serious nature. *Shea v. Grafe,* 88 Wis. 2d 538, 545-46, 274 N.W.2d 670, 674 (1979). Because the provisions of the Aetna policy are uncontested, and because the doctrine allowing wholesale avoidance of a policy upon proof of any degree of material misrepresentation works a substantial hardship on insureds who are not notified of the effects of such misrepresentation, we may consider this issue sua sponte. Accordingly, we requested the parties to brief this issue.

The interpretation of an insurance policy presents a question of law that we resolve de novo. *Hagen v. Gulrud,* 151 Wis. 2d 1, 3, 442 N.W.2d 570, 571 (Ct. App. 1989). Whether an ambiguity exists in the provisions of an insurance policy depends upon the meaning that the term or provision would have to a reasonable person of ordinary intelligence. *Kozak v. United States Fidelity and Guar. Co.,* 120 Wis. 2d 462, 466-67, 355 N.W.2d 362, 364 (Ct. App. 1984). An ambiguity exists when a word or phrase is reasonably susceptible to more than one construction. *Id.* at 467, 355 N.W.2d at 364. Where an ambiguity exists, we must construe the policy against its drafter and in favor of the insured. *Schroeder by Swanson v. Blue Cross & Blue Shield,* 153 Wis. 2d 165, 173, 450 N.W.2d 470, 473 (Ct. App. 1989). All provisions tending to limit liability must be strongly construed

against the insurer. *Kozak,* 120 Wis. 2d at 467, 355 N.W.2d at 364.

Aetna's policy contained the following language:

> Concealment or fraud. We do not provide coverage for any insured who has:
> (A)   Intentionally concealed or misrepresented any material fact or circumstance;
> (B)   Made false statements or engaged in fraudulent conduct; relating to this insurance.

We conclude that this policy language is ambiguous in that it could be read by a reasonable person to apply to statements made prior to the signing of the policy, as in the application for insurance, or to apply more expansively, including statements made later in a proof of loss.[4]

The policy language, phrased in the past tense, refers to conduct that has already taken place at the time the contract is signed (no coverage for an insured who "has concealed," "has misrepresented," "has made false statements," "has engaged in fraudulent conduct."). It does not clearly reference behavior in the future.

In contrast, the policy in *Stebane Nash* was a standard statutory fire policy,[5] which provided:

---

[4]We note that Aetna vigorously argued that the language of sec. 631.11(2), Stats., does not apply to misrepresentations made in a proof of loss form. As previously indicated, Aetna prevailed on that argument. It is contradictory to contend now that contract language clearly referencing concealments, misrepresentations or false statements made in the negotiation and/or application for insurance impliedly covers misrepresentations in the proof of loss.

[5]The policy followed the form prescribed in secs. 203.01 and 202.085, Stats. (1969).

This entire policy shall be void if, *whether before or after a loss,* the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.

*Id.* at 123, 133 N.W.2d at 744 (emphasis added). The *Stebane Nash* language clearly puts the insured on notice that later representations made by them can serve to void the policy. In our view, Aetna's policy fails to give the insured such clear notice.

We conclude that the Aetna policy in question did not provide for avoidance of liability when material misrepresentations were made after the policy was signed. Aetna is obligated, under its policy, to cover the Tempelises for losses as determined in the jury verdict. For this reason, we reverse and remand to the trial court for proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded with directions.