**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA,**
Plaintiff–Appellant,

v.

**B. CIANCIOLO, INC., and the Cianciolo Company, Inc., Defendants–Appellees.**

No. 91–3821.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 15, 1993.

Decided March 18, 1993.

Donald C. Fellows, Kenneth M. Kenney, Fellows, Piper & Schmidt, Milwaukee, WI, James T. Crotty, Zacarias R. Chacon (argued), Julie A. Hoffman, Crotty & Chacon, Chicago, IL, for plaintiff-appellant.

Howard B. Mitz (argued), Mequon, WI, for defendants-appellees.

Before CUMMINGS, EASTERBROOK, and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

During the evening of December 4, 1980, a fire swept through the building housing a wholesale produce business in Wisconsin. The firms notified their insurer, American Casualty Company (which we call CNA, its trade name). Sandy Cianciolo, the general manager of the insured firms, agreed with CNA's inspector that the fire's multiple points of origin implied arson. CNA launched an investigation. Meanwhile Cianciolo (as we call the two corporations collectively) had trouble substantiating its claims of loss: most of its records had been destroyed in the fire. Although Cianciolo started filing proofs of loss in March 1981, CNA did not receive any records until May 1981, after Cianciolo changed accountants.

Cianciolo contended that the interruption of its business by the fire cost it more than $220,000 in profits plus another $103,000 in uncollectible accounts receivable. Its theory was that customers would not pay when the loss of records in the fire left Cianciolo unable to send or substantiate invoices. CNA doubted these claims, which Cianciolo could not corroborate. During a meeting with Cianciolo's lawyer on August 7, 1981, CNA offered $12,000 to compromise the business loss claims. Rather than negotiate, Cianciolo's lawyer stormed out of the meeting, vowing to meet CNA in court. CNA presently filed this diversity action, seeking a declaratory judgment that it owes nothing in light of what it characterized as fraudulently inflated claims. Cianciolo filed counterclaims demanding the full amount of its claims, plus damages for what it called CNA's bad faith refusal to pay up.

The litigation is almost 12 years old. A jury trial was held in December 1986. Immediately before the start of the trial, Cianciolo reduced its claims by more than half. Answering special interrogatories, the jury concluded (1) that Cianciolo had submitted "an inflated business earnings claim either recklessly or with the intent to deceive and defraud" CNA; (2) that Cianciolo had submitted "an inflated accounts receivable claim either recklessly or with the intent to deceive and defraud" CNA; and (3) that CNA had "exercise[d] 'bad faith' in handling the insurance claim" submitted by Cianciolo. The jury found that Cianciolo lost $53,235 because of the interruption of its business and $62,706 in uncollectible receivables. It added $5,000 in compensatory and $1 in punitive damages on the "bad faith" claim.

The jury's conclusion that Cianciolo committed fraud is not easy to reconcile with its conclusion that CNA denied the claim in bad faith, for if Cianciolo committed fraud then CNA had every right to deny the whole claim. The contract of insurance provides: "This entire policy shall be void if, whether before or after a loss, the Insured has willfully concealed or misrepresented [sic] any material fact or circumstance concerning this insurance or the subject thereof". CNA asked the court to enforce the jury's fraud verdicts, which it

believed led to complete victory. Cianciolo asked the court to enter judgment on the jury's monetary awards. For more than four years, the district judge did neither of these things. The parties asked the judge to act; the judge did not reply. On May 15, 1991, CNA filed a petition for a writ of mandamus, asking us to direct the judge to rule on the post-verdict motions. The very next day the district judge set aside the verdicts and ruled that a new trial would be held, on a ground neither side had raised: that the instructions failed to inform the jury that "reliance" by the insurer is an element of fraud.

Citing *Northwestern National Insurance Co. v. Nemetz*, 135 Wis.2d 245, 262, 400 N.W.2d 33, 40 (Ct.App.1986), the judge explained: "Because the jury was not instructed that it must find reliance on the part of the insurance company for any misrepresentation in a proof of claim to be material and, therefore, void the policy, the verdict is infected by an error of law." A brief dictum in *Nemetz* supports this position, but the dictum is contrary to a line of precedent in Wisconsin that reliance is unnecessary. E.g., *F. Dohmen Co. v. Niagara Fire Insurance Co.*, 96 Wis. 38, 71 N.W. 69 (1897); *Worachek v. New Denmark Mutual Home Fire Insurance Co.*, 102 Wis. 88, 91–92, 78 N.W. 411, 412 (1899); *Myer v. Home Insurance Co.*, 127 Wis. 293, 299, 106 N.W. 1087, 1088–89 (1906); *Stebane Nash Co. v. Campbellsport Mutual Insurance Co.*, 27 Wis.2d 112, 124, 133 N.W.2d 737, 748 (1965). See also *American Home Fire Assurance Co. v. Juneau Store Co.*, 78 F.2d 1001 (7th Cir.1935). It is easy to see why. An insurer that relied on a fraudulent proof of loss would pay the claim, and unless the insurer later learned the truth there would be no litigation. If reliance were essential, then any insurer that actually paid (because it had been taken in) would be relieved of the legal obligation to pay, while an insurer that did not pay (because it discovered the fraud) would be legally required to pay. A clause vitiating the policy in the event of fraud is designed to give the insured a compelling reason to tell the truth. A reliance requirement, however, would eliminate that incen-tive—for if the fraud succeeded, the insured would keep the money, and if the fraud failed, the insured would be no worse off. See *Tempelis v. Aetna Casualty & Surety Co.*, 164 Wis.2d 17, 473 N.W.2d 549 (Ct.App.1991) (repudiating the dictum in *Nemetz*), affirmed, 169 Wis.2d 1, 485 N.W.2d 217 (1992).

The district judge's brief opinion did not mention either the many decisions of the Supreme Court of Wisconsin holding that reliance is not an element of the insurer's burden or the powerful reasons why this must be so. CNA asked the district judge to reconsider. The judge declined, giving no reasons. But he must have had second thoughts, because at the end of the second trial (in August 1991) the instructions once again omitted any reference to reliance. The judge told the jury that only "material" misrepresentations counted as fraud and did not define that term. The second jury saw things in a new light. It answered each of the three questions differently from the first: no fraud in the business earnings claim, no fraud in the accounts receivable claim, and no bad faith by CNA. This jury awarded Cianciolo $300,000 for losses caused by the interruption of its business and nothing for its uncollectible receivables. By the time of the second trial, Cianciolo had been claiming only $94,190 for business interruption losses, so the judge reduced the award to this sum. Cianciolo is willing to accept the curtailed award, even though the first jury gave it more; CNA wants the first verdict reinstated, contending that the jury's findings of fraud are free from error and dispose of the remainder of the case.

■ As we have explained, the district judge's reason for setting aside the first jury's verdict is wrong. Reliance is not essential. A policy of insurance providing that misrepresentations by the insured render the contract void will be enforced, provided the misrepresentations are material. *Tempelis*, 169 Wis.2d at 11, 485 N.W.2d at 221. No one doubts that Cianciolo's representations were material, and that they were false. Cianciolo conceded as much when it abandoned more than half of its

claims immediately before the first trial. The first jury awarded Cianciolo only part of the reduced claim, and the second jury fixed the lost accounts receivable at zero. So the principal dispute at the trials was whether the errors were attributable to the destruction of Cianciolo's records or were instead deliberate (or reckless) efforts to mislead its insurer.

A decision either way is justifiable. CNA points to numerous claims that do not pass the straight face test. For example, Cianciolo demanded $7,800 as the cost of repairing trucks supposedly damaged by the fire. In fact, the trucks had been parked four blocks from the building at the time of the blaze and were unscathed. Cianciolo sought $41,214 that it could not collect from Dale's Fresh Approach, telling CNA that Dale's would not pay its bills because Cianciolo could not produce copies of its invoices. In fact, Cianciolo and Dale's had been in litigation over these bills since August 1980, four months before the fire, and Dale's attorney testified at both trials that Dale's had never asserted inadequate documentation as a reason for its refusal to pay. Cianciolo concedes the inaccuracy of many claims it filed with CNA but denies that it committed fraud. The jury could have concluded that Cianciolo told CNA that its was submitting off-the-cuff estimates to comply with what it viewed as unreasonably short timetables for making its proofs. Cianciolo contends that it listed everything anyone could think of, planning to make a serious claim later— telling CNA that this was exactly what was going on, and opening its (remaining) records to full inspection. The first jury must have accepted CNA's explanation, and second jury Cianciolo's. Both were acting within the wide latitude accorded triers of fact.

■ An order setting aside a jury's verdict and directing the holding of a new trial is interlocutory, but subject to appellate review after the second trial. If judgment should have been entered on the first verdict, the court can restore that outcome despite the intervention of a second trial. *Ash v. Georgia–Pacific Corp.*, 957 F.2d

432, 438 (7th Cir.1992); *Seltzner v. RDK Corp.*, 756 F.2d 51 (7th Cir.1985). Because the instructions given to the first jury were free from error, and the evidence supports the first jury's conclusion that Cianciolo submitted fraudulent claims, entering judgment on the first verdict seems to be in order. Except for one thing: the first jury's verdicts look inconsistent. Inconsistency produces a new trial. *Gallick v. Baltimore & Ohio R.R.*, 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963); *Bates v. Jean*, 745 F.2d 1146, 1152 (7th Cir.1984); *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 677–78 (7th Cir.1985). You cannot have both fraudulent claims by an insured and bad faith denials by the insurer. Well, *maybe* you could: perhaps the insured committed fraud but the insurer did not detect that problem, denying the claims for some other, and illegitimate, reason. Cianciolo contends that CNA acted in bad faith because, among other things, it was not listening: once it suspected arson, it stopped paying serious attention to Cianciolo's claims. If that is so, then the verdicts are reconcilable, and the jury's finding of fraud by Cianciolo requires the court to enter judgment for CNA.

■ There is another way to rescue the first verdict. A judge may dissipate the inconsistency by setting aside one of the conflicting verdicts, if that verdict was unsupported by the evidence. *Jurgens v. McKasy*, 927 F.2d 1552, 1556 (Fed.Cir.1991) (assumption). Although there is no priority among inconsistent verdicts—the judge may not assume that the first answer is the "authentic" one with which later answers must be reconciled, but cf. *Los Angeles v. Heller*, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (apparently following this path, without explanation)—the court need not treat *all* of the inconsistent verdicts as fallacious. Whenever a court grants a judgment notwithstanding the verdict on one claim in a multi-claim case, it is imputing irrationality to the jury (for JNOV is appropriate only when the jury has announced a conclusion that no reasonable person could have reached on the evidence presented). Yet the court, having

found an irrational part of the verdict, does not annul the rest on the ground that the jury has displayed ecumenical inability or unwillingness to follow its instructions. Instead the court excises the offending verdict while enforcing the remainder. Just so here: we may excise one answer in a way that leaves the rest consistent, and thus enforceable. "Appellate courts should be slow to impute to juries a disregard of their duties," *Fairmount Glass Works Co. v. Cub Fork Coal Co.*, 287 U.S. 474, 485, 53 S.Ct. 252, 255, 77 L.Ed. 439 (1933), which implies that we should do what we can to save the verdict against the specter of inconsistency.

Recall how Cianciolo replied to CNA's charge of fraud: that it *told* CNA it was submitting inflated claims, which would be cut down to size later.* This defense makes a finding of bad faith on CNA's part impossible to sustain. An insurer need not pay a claim that its own insured says is false! It may wait for the insured to submit its real demand. Cianciolo took five years to do so. Not until the eve of trial, when it reduced its claims by 57%, did Cianciolo present a plausible request for payment, and both juries determined that even this request was excessive.

■■■ Under Wisconsin law, the elements of the tort of an insurer's bad faith refusal to pay a claim are: (1) there was no reasonable basis for the insurer's refusal, and (2) in denying the claim, the insurer either knew or recklessly failed to ascertain that the claim should have been paid. *Anderson v. Continental Insurance Co.*, 85 Wis.2d 675, 691, 271 N.W.2d 368, 376 (1978); *Poling v. Wisconsin Physicians Service*, 120 Wis.2d 603, 607, 357 N.W.2d 293, 296 (Ct.App.1984). An insurer that has a fairly debatable basis for denying a claim does not exhibit bad faith in doing so. *Anderson*, 85 Wis.2d at 691, 271 N.W.2d at 376. Cianciolo's own explanation of its claim supplied CNA with a reasonable basis

for withholding payment, at least until Cianciolo squeezed the water out of its estimates.

■■■ CNA did the things Wisconsin expects an insurer to do, such as investigating claims presented to it. During the investigation CNA learned facts that made it suspicious—facts from the appearance of arson to the questionable nature of Cianciolo's losses. CNA did nothing to hinder Cianciolo from presenting an accurate claim (and, contrary to Cianciolo's argument to the jury, had no legal obligation to help it present better proofs of claim). In August 1981 CNA suggested a compromise, which brought a threat of litigation rather than a counterproposal. Arriving at such a pass, an insurer is entitled to ask the court to resolve the dispute, which CNA promptly did. So Cianciolo's own story sinks its argument that CNA acted in bad faith. Of course the jury may have rejected Cianciolo's version of events. If, as CNA submits, Cianciolo always represented its proofs of claim as accurate, then CNA's discovery during the investigation that many (e.g., Dale's Fresh Approach) were bogus supplied CNA with ample basis to invoke the fraud clause of the policy and deny the entire claim outright. (CNA's letter of August 13, 1981, refusing to pay any part of the claim explicitly relied on the fraud clause of the policy.) Cianciolo contended, in a sworn proof of claim, that *all* of its account debtors had refused to pay *all* of their outstanding balances as a result of the fire's destruction of its business records. Such a claim is hard to swallow, and CNA did not have to nibble.

Perhaps sensing the difficulties in its position, Cianciolo contends that the policy does not have a fraud clause after all. Its brief includes a document captioned "WISCONSIN AMENDATORY ENDORSEMENT" that voids coverage only for fraud "in the negotiation of this policy". The

---

* Cianciolo also contends that its willingness to allow CNA to inspect its surviving records negates any claim of fraud, even if it neglected to tell the insurer that the claims had been inflated. Not so. Telling a tall tale, and verifying its truth (as Cianciolo did in the proofs of claim),

then leaving it to someone else to find the falsity, is a *definition* of fraud rather than an explanation why there is no fraud. The only legitimate defense is the one we address in the text.

document attached to the brief is blank, neither included in the Cianciolo–CNA policy nor otherwise a part of the record in this case. The endorsement also has not been reproduced in full: although a similar endorsement is part of the actual policy, a caption omitted from what was furnished to us reads: "Inland Marine IM 223 (Ed. 3–78)". In other words, the endorsement modifies the coverage of goods during transportation by water; it has nothing to do with the entirely separate coverage under which Cianciolo made its claims. Incomplete and misleading documents (submitted to us by the same lawyer who submitted Cianciolo's claims to CNA) do not persuade courts. Judges are no less resistant than insurers to being bamboozled. As it turns out, the argument based on the endorsement, and some related arguments that we need not discuss, were waived when Cianciolo did not press them in the district court.

The only obstacle to accepting the first jury's verdict is the potential inconsistency of its answers. We have resolved this in two ways: first by observing that Cianciolo's theory of bad faith makes the verdicts consistent, and second by concluding that Cianciolo's response to CNA's charge of fraud shows that CNA cannot have acted in bad faith. That leaves the jury's conclusion, supported by ample evidence, that Cianciolo submitted fraudulent proofs of claim. These exaggerated claims permitted CNA to deny coverage. The judgment is accordingly reversed, and the case is remanded with instructions to enter judgment for CNA.

REVERSED.