19 F.3d 1436
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Robin ZAHRAN and Karen Zahran, Plaintiffs-Appellants/Cross-Appellants,
v.
FRANKENMUTH MUTUAL INSURANCE COMPANY,
Defendant-Appellee/Cross-Appellant.
 Nos. 92-1778, 92-1848.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 1, 1993.
Decided March 28, 1994.
Rehearing and Suggestion for Rehearing En Banc
Denied June 9, 1994.
 
 1
 Before CUMMINGS and COFFEY, Circuit Judge, and ZAGEL, District Judge.*
 
 ORDER
 
 2
 Robin and Karen Zahran insured their farm buildings and property located in Denmark Wisconsin. On May 24, 1989, a tornado struck the farm damaging barns and other equipment. Adjusting the claim was an arduous process and neither the Zahrans nor their insurer, Frankenmuth Mutual Insurance Company, were satisfied with the outcome. The Zahrans sued for over $537,000 for property damages and consequential damages, plus interest, attorney fees and costs. Frankenmuth eventually counterclaimed seeking to get back the $182,888.37 it had paid because, it said, the Zahrans willfully hid or misrepresented material facts about their claim in order to deceive Frankenmuth. Jurisdiction was based on diversity of citizenship, so Wisconsin law applies.
 
 
 3
 A jury decided against the Zahrans and, in a special verdict, ruled that the Zahrans transgressed the policy provision barring misrepresentation and fraud in claims. The district court entered judgment for defendant, denied the Zahrans' post-trial motions and ordered them to pay Frankenmuth costs. The Zahrans appeal this. Frankenmuth, in turn, appeals the district court's dismissal, without prejudice and without costs, of the Frankenmuth counterclaim.
 
 
 4
 There is a lot of detail in the facts of this case, all of which we have examined, partly because the Zahrans, who had lawyers at trial, proceeded without counsel on appeal and sought to retry the case before us, even to the point of citing evidence which was stricken by the trial court. We spare any non-party who happens on this opinion the burden of reading them, and the parties need no further recital.
 
 
 5
 The Zahrans say the verdict was contrary to the evidence. This is a hard case to make. A reasonable basis for the verdict is all that is required. A jury may decide for a party with what, on the cold record, appears the weaker evidence. Trzcinski v. American Cas. Co., 953 F.2d 307, 315 (7th Cir.1992).
 
 
 6
 What Frankenmuth sought to show was that the Zahrans claim was unworthy of belief.[1] The Zahrans said they simply secured repair estimates from reputable contractors to defeat Frankenmuth's estimates. They did not prepare the estimates (more precisely, they say they "did not directly participate in [their] preparation") and, if there were misrepresentations in them, they are not to be laid at the Zahrans' door. Yet, Frankenmuth had evidence, which a jury could choose to believe, that Robin Zahran asked one estimator to quote, over the phone, a price for repairing one slurry tank ring and to do so without inspecting the damage; Robin Zahran then doubled the estimate and submitted a claim for two rings. On another occasion, Robin Zahran secured estimates of replacement cost from a seller of buildings who did not believe that replacement was necessary. A jury could infer that replacement cost rather than repair cost was used because Robin Zahran asked for it directly or implicitly.
 
 
 7
 Then there is evidence that total loss was claimed on barn 151 when Robin Zahran had an estimate for a much lower cost repair. When Robin Zahran claimed barns 152 and 154 were damaged, which he did not do until September 1989, nearly six months after the tornado, he said he had a written report from a structural engineer stating that barns 151 and 152 were unsound and total losses. This was untrue. A structural engineer did visit the barns, but did so in December 1989 and never prepared a written report. There was evidence that barn 154 was undamaged. One contractor testified that when he was talking to Robin Zahran about how the big barn could be repaired, Robin Zahran told him "Stay out of it. I am going to get the insurance company to put me up a new barn ... this is my showplace." Later Zahran called the contractor "several times a day any time of day" and threatened to sue him if he repaired the barn.
 
 
 8
 Robin Zahran also claimed that a slurry tank pump was damaged. Later he learned it was undamaged but never notified Frankenmuth to withdraw that claim. There were photographs of the barns and the slurry tank which could have supported a finding that the tornado damage was not nearly so grave as the Zahrans claim. Finally, Robin Zahran was not a full-time farmer; he sold life and health insurance and annuities as his principal occupation. He may not have been an expert on property and casualty insurance, but he had made property loss claims for himself, and a jury could believe he was not an insurance naif.
 
 
 9
 There is clearly enough here for a jury to reach a decision against the Zahrans.[2] We do not say the verdict was inevitable. The Zahrans had something to say in their favor on most of the incidents brought up by Frankenmuth. It was up to the jury to decide whom to believe and what inferences should be drawn from the circumstances of the case. There is no reason to believe that this jury, or any jury, would not give a farm owner a fair shake in a dispute with their insurance company.
 
 
 10
 The Zahrans rely on Omaha Paper Stock Co. v. California Union Ins. Co., 262 N.W.2d 175 (Neb.1978), which held that an insurance company is equitably estopped from asserting misrepresentation in proofs of loss where the insurance company failed to have an expert engineer of its own choosing appraise the damage. A Wisconsin court has cited Omaha Paper and observed that Nebraska, (and only Nebraska), unlike Wisconsin, requires an insurance company to show that it relied on misrepresentation in proof of loss. See Tempelis, 473 N.W.2d at 552. So we doubt that Wisconsin would adopt Nebraska's rule. And even if it did, it would mean nothing here for two reasons: (1) Frankenmuth did send its adjuster to examine the premises within days of the tornado and others came later, and (2) the Zahrans did not pursue the argument in the trial court, offered no instruction, and sought no jury findings of fact which would support application of estoppel.
 
 
 11
 The Zahrans cannot prevail here on the argument that the verdict was wrong. But they do make further claims that the trial was unfair and they ought to have the matter retried. The special verdict form, say the Zahrans, misled the jury into believing that an overvaluation of one item in the proof of loss would void the whole policy. This objection was made at trial, but not until the jury retired to deliberate and the district court ruled, as it could reasonably do, that the objection came too late. This argument is waived.[3]
 
 
 12
 The Zahrans say the jury was allowed to equate innocent overvaluation with fraud. But the jury was told, without objection by the Zahrans, that "an exaggeration of value as mere opinion, a mere misstatement based upon an erroneous estimate of value, an honest mistake, an innocent overvaluation lacks the essential element of fraud and does not operate to void the policy." To find fraud a jury would have to find more than exaggerated opinion, erroneous estimate, honest mistake and innocent overvaluation. This is fair. Indeed, as to "exaggeration," one could read Lykos v. American Home Ins. Co., 609 F.2d 314, 316 (7th Cir.1979) (Illinois law), to say that the instruction was more than fair.
 
 
 13
 The Zahrans next assign error to several evidentiary rulings. Frankenmuth wanted to prove that it paid the Zahrans for a fire loss at barn 151 which occurred on July 6, 1990. The district judge ruled the evidence inadmissible. There might be an inference that the Zahrans were suing to recover for property damage for which they were later compensated. The evidence may have been admissible for just this purpose if the barn had not been substantially rebuilt after the tornado. But we do not know if this is so because the district judge permitted only brief reference to the matter on cross-examination and then only to impeach credibility. When Robin Zahran testified, he was asked on cross-examination, without objection, whether he had made a fire loss for barn 151 in November 1990. He answered a later question, again without objection or motion to strike, that "75 is not correct" and that "151 did not have $75,000 for what you're talking about." With the court's permission, Frankenmuth showed Robin Zahran a draft of $75,000 for the fire loss on barn 151, when he admitted receipt of payment for barn 151. That was the end of the matter. It was within the discretion of the court to permit this to impeach Robin Zahran's credibility in light of Zahran's denial of receipt. There is no error.
 
 
 14
 The Zahrans wanted to prove that Frankenmuth was considering making an offer of an additional $25,000 to "resolve [the] entire matter." This, they argue, showed bad faith by Frankenmuth in making a "low-ball" offer. There are barriers to admission of this evidence. Thinking about an offer is not the making of an offer and, if Frankenmuth did not actually make an unconscionable proposal, the evidence proves nothing here but that one Frankenmuth employee had questionable thoughts on which neither he nor his employer acted. Rule 408 would exclude from evidence an offer, had it been made, as the district judge ruled. Most importantly, there was no assertion at trial that this evidence was being offered in support of the bad faith claim. In the end, all that the Zahrans' counsel said was "I'm offering it simply to show that an offer was conveyed to Mr. Mours [Frankenmuth's adjuster] by Mr. Spalding [Frankenmuth's claim supervisor]." This does not fairly advise the district judge of the purpose for which the evidence is offered, and so the Zahrans cannot complain of the failure to admit it.
 
 
 15
 At some point, the district judge limited each side's testimony. We do not find this ruling in the record, but both sides agreed it was made and Frankenmuth does not dispute the Zahrans' assertion that the limit was nine hours. Both sides agreed the trial was going on longer than necessary. The judge did not want deliberation to occur on Christmas Eve. A judge may manage trials, and we do not intervene in the absence of unreasonableness. See Daniel J. Hartwig Assocs., Inc. v. Kanner, 913 F.2d 1213, 1222 (7th Cir.1990). Were we more willing to intervene, we would not do so here. The district court noted that the "time allotted to the plaintiff has long expired, and I would normally have cut you off except that it was cross-examination. The defendants still have less than an hour left." The briefs filed here by the Zahrans evidence the need to cabin their presentations, and all that Robin Zahran was prevented from doing was to testify in rebuttal about a document already in evidence. His lawyer admitted "it's in the record. I think it's pretty well in the record. I wanted to introduce the blowup for the jury for closing argument." Once over the ground was enough here.[4]
 
 
 16
 Finally, there is Frankenmuth's claim that the district court erred in not granting judgment in its favor and, instead, dismissing its counterclaim of misrepresentation, concealment or fraud without prejudice to file another action. The district court refused to enter judgment because Frankenmuth did not submit jury instructions or special interrogatories (even after the court requested that they be submitted) and did not litigate whether it was entitled to restitution for the amounts already paid out under the insurance policy. Federal Rule of Civil Procedure 49 says, in part, that when a court instructs a jury by special verdict or interrogatories and omits an issue of fact raised by the pleading or by the evidence, "each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury." FED.R.CIV.P. 49(A). Frankenmuth concedes it did not tender a separate instruction for its counterclaim. Frankenmuth, however, says the special written finding that "the Zahrans violated the policy provision relating to misrepresentation, concealment or fraud by willfully concealing any material fact or circumstance concerning their insurance claim" is a finding as a matter of law that the entire policy is void and entitles Frankenmuth to restitution of the proceeds paid out on the policy. Frankenmuth points to another part of Rule 49 which permits a court to make a finding on the issue submitted or which deems the court "to have made a finding in accord with the judgment on the special verdict." FED.R.CIV.P. 49(A). But the district court noted it would be unjust for Frankenmuth to get restitution based on misrepresentations, concealment or fraud on proofs of loss which were not required for the preliminary payments of $136,687.74[5]
 
 
 17
 "As a general rule, if the insurer pays a loss, being induced so to do by fraud, or by mistake as to facts which, if it had knowledge thereof, would have been a sufficient defense in an action by the insured upon the policy, the money so paid may be recovered." 18 COUCH ET AL., COUCH ON INSURANCE 2d SEC. 74:191 (Rev.Ed.1983); 6 J. Appleman & J. Appleman, Insurance Law & Practice SEC. 3979 (MISTAKE) (1972). "[I]F AN OBLIGATION PROCURED BY FRAUD IS PAID VOLUNTARILY WITH A FULL KNOWLEDGE OF THE FACTS, THE AMOUNT SO PAID CANNOT BE RECOVERED." 66 66 Am.Jur.2d SECS. 116 & 122 (RESTITUTION AND IMPLIED CONTRACTS) (1973). ONE COULD ARGUE THAT, UNDER THESE BASIC PRINCIPLES, FRANKENMUTH IS NOT ENTITLED TO RECOUP MONIES PAID OUT ON THE POLICY WHERE IT DID SO VOLUNTARILY WITH KNOWLEDGE FROM ITS OWN EXPERTS AND INVESTIGATORS OF THE ACTUAL PROPERTY DAMAGE SUSTAINED AND WHEN, AFTER SUSPECTING FRAUD, IT REFUSED TO MAKE FURTHER PAYMENTS. THE ZAHRANS ACTUALLY SUFFERED SOME OF THE LOSSES CLAIMED, AND IT WOULD APPEAR JUST TO COMPENSATE THEM FOR THOSE LOSSES. BUT FRANKENMUTH DOES NOT BASE ITS RIGHT TO RECOVER ON EQUITABLE PRINCIPLES. RATHER, IT SEEKS RESTITUTION BASED ON THE PLAIN LANGUAGE OF THE POLICY, AND WE SHOULD NOT BE MOTIVATED SOLELY BY A YEARNING TO SEE E INSUREDS WHO PAY PREMIUMS AND SUFFER ACTUAL LOSSES COLLECT INSURANCE.[6]
 
 
 18
 Given that the jury found a violation of the clear policy provision voiding the entire contract where fraud exists, we can conclude only that the district court erred in denying Frankenmuth the benefit of its bargain and refusing to enter judgment in favor of Frankenmuth on its counterclaim. The Zahrans bargained for the policy and were on notice of the harsh penalties for fraud. They cannot now reasonably claim injustice from mere application of its terms. Moreover, there is very little point to requiring Frankenmuth to file a new lawsuit, the result of which is inevitable given that the only operative and contested fact has been found in its favor and against the Zahrans.
 
 
 19
 The district court's order and judgment entered on the jury verdict in favor of Frankenmuth is AFFIRMED. The dismissal of Frankenmuth's counterclaims is REVERSED AND REMANDED for entry of judgment not inconsistent with this opinion.
 
 
 
 *
 The Honorable James B. Zagel, District Judge for the Northern District of Illinois, is sitting by designation
 
 
 [1]
 There is a spat over whether Frankenmuth had to show that it relied on misrepresentations in order to defeat the Zahrans' lawsuit. Frankenmuth did not. Tempelis v. Aetna Cas. & Sur. Co., 473 N.W.2d 549 (Wis.Ct.App.1991), aff'd and modified on other grounds, 485 N.W.2d 217 (Wis.1992). The spat is pointless because the Zahrans did not object to a jury instruction which excluded reliance as an element of the defense. Fed.R.Civ.P. 51; Sims v. Mulcahy, 902 F.2d 524, 525 (7th Cir.1990)
 
 
 [2]
 The Zahrans argue they should not be treated as a collective entity. Whatever Robin Zahran may have done, there is no evidence that Karen Zahran did anything wrong. There are Wisconsin cases which allow an innocent insured to collect for damage intentionally caused by another insured. Hedtcke v. Sentry Ins. Co., 326 N.W.2d 727 (Wis.1982). Whether that doctrine would apply here is open to question, and we do not have to answer. The Zahrans never presented this argument to the trial court during or after trial, never raised it in defense to the counterclaim, did not object to instructions referring to themselves collectively and referred to themselves collectively in closing argument. There is, incidentally, a good reason why the innocent insured argument was not made. In Hedtcke, the court noted that the trial court would have the authority to see that the wrongdoer insured would not benefit from the proceeds; something easy to do in Hedtcke because the guilty insured was hostile to the innocent insured and may have damaged the property to hurt her. (Judith Hedtcke, the innocent insured, had vacated the marital home, initiated divorce proceedings and obtained a court order directing Ronald Hedtcke to vacate the premises. Ronald, who later pled guilty to arson, burned the property three days before he had to vacate it). We do not see how it could be done in this case, and we suspect that the Zahrans' counsel also did not see how Karen Zahran could be paid without conferring some benefit on Robin Zahran
 
 
 [3]
 It is also unpromising since the insurance contract states, unambiguously, that the "entire policy is void" if "whether before or after a loss" the insured has willfully concealed or misrepresented any material fact or circumstance concerning the insurance or its subjects. In dicta the Court of Appeals of Wisconsin said that such a provision "clearly puts the insured on notice that [post-loss] representations made by them can serve to void the policy." Tempelis v. Aetna Cas. & Sur. Co., 473 N.W.2d 549, 554 (Wis.Ct.App.1991). This dicta was echoed, although with less force, when the Supreme Court of Wisconsin affirmed and modified the Court of Appeals judgment. Templis v. Aetna Cas. & Sur. Co., 485 N.W.2d 217, 221-22. The Supreme Court also suggested that, where the misrepresentations covered a very small part of the claim, it might not enforce the contract provision, i.e., a fraudulent receipt for a $50 dinner might not void a $2,000,000 claim for the destruction of a home. That is not this case. And Wisconsin has not abandoned its rule that when faced with a clear insurance contract it will "merely apply" its terms according to their everyday meaning or policy definition. Kremers-Urban Co. v. American Employers Ins. Co., 351 N.W.2d 156, 163 (Wis.1984)
 
 
 [4]
 The Zahrans make other arguments that are not clearly stated or properly developed. (a) The slurry tank was listed in the policy under the heading "Coverage F--Out buildings, $500 deductible" and insured for $40,000 with a separate premium of $75. The Zahrans contended that they sought to collect only for damage to a portable part of the slurry tank under the blanket coverage for unscheduled personal property. The district judge refused to permit opinion evidence that the part was personal property; the witness was not qualified to give such an opinion and it made no sense to have a separate listing and premium for the slurry tank if it was covered as unscheduled personal property. We do not see how a jury could infer fraud from the court's ruling or its refusal to accept the Zahrans' interpretation of a contract
 (b) The Zahrans say they were victimized by opposing counsel who knowingly used the perjured testimony of an engineer who said there was no damage to the slurry tank. But the Zahrans had the opportunity to bring out the defects in the engineer's testimony and, even now, they fail to show how the testimony is perjured (as opposed to mistaken). They simply point to Exhibit Q which is 20 pages of documents and photographs by an adjuster and tell us, without analysis of the document, that this is the proof of perjury. We are not required to comb through these pages and speculate about what is or is not false. This is particularly so where the adjuster says in the Exhibit that the damage did not really show up on the photographs but, with the naked eye, "it does appear as if there has been a twisting effect." This is hardly such unequivocal proof of actual damage that it puts the lie to any contrary opinion. The matter also was not included in the motion for new trial.
 (c) The Zahrans complain of late production of documents and a videotape, but cannot tell us which documents they mean or how they were prejudiced by the delay in production. These documents, discovered in another case, are not part of this record. Both the district court and this court have denied the Zahrans' motions to supplement the record.
 (d) A number of claims are made for the first time in their Reply Brief and will not be considered by us.
 
 
 [5]
 The Zahrans also sought reimbursement of an additional $20,274 paid out of the policy
 
 
 [6]
 See American Home Fire Assurance Co. v. Juneau Store Co., 78 F.2d 1001, 1003 (7th Cir.1935) ("court [interpreting Wisconsin Standard Fire Insurance Policy] should [ ] unhesitatingly act to prevent attempted frauds on the part of the insured" even though penalty of voiding entire policy is "heavy and seemingly harsh"). The Juneau court, however, could not enter judgment in insurer's favor because of inconsistent jury verdict. See also Tenore v. American & Foreign Ins. Co., 256 F.2d 791 (7th Cir.1958) (following Juneau, court held insured could not recover any sum under Illinois policy where provision voided entire policy in case of fraud or false swearing, despite fact insurers did not pay out money and were not deceived by insured's claims)