*234JUDGMENT
JOAN GREENDEER-LEE, Associate Judge.
The Ho-Chunk Nation Trial Court convened a Trial in the Ho-Chunk Nation v. Tammy Lang in Black River Falls, WI, February 12, 1999. Notices of the trial were sent to the parties on February 1, 1999. William Boulware, Department of Justice Counsel for Ho-Chunk Nation, and *235Christine Raven-Kerry, HCN Headstart Director, were present and appeared as plaintiff to the suit. The defendant, Tammy Lang, did not appear to defend herself at Trial.1 The Court hereby finds IN FAVOR of the plaintiff on defendant’s civil conversion of tribal Headstart monies and defendant’s failure to commit to fulfilling her fiduciary duties to the Nation and therefore, relief is granted for all monies misappropriated by the defendant, plus attorney’s fees.
APPLICABLE LAW
Ho-Chunk Nation Constitution
ART I, Section 2. Jurisdiction. The jurisdiction of the Ho-Chunk Nation shall extend to all territory set forth in Section 1 of this Article and to any and all persons or activities therein, based upon the inherent sovereign authority of the Nation and the People or upon Federal law.
ART VII, Section 5.(a) Jurisdiction of the Judiciary. The Trial Court shall have original jurisdiction over all cases and controversies, both criminal and civil, in law or in equity, arising under the Constitution, laws, customs and traditions of the Ho-Chunk Nation, including cases in which the Ho-Chunk N ation, or its officials and employees, shall be a party. Any such case or controversy arising within the jurisdiction of the Ho-Chunk Nation shall be filed in Trial Court before it is filed in any other court. This grant of jurisdiction by the General Council shall not be construed to be a waiver of the Nation’s sovereign immunity.
ART XII, Section 1. Immunity of Nation from Suit. The Ho-Chunk Nation shall be immune from suit except to the extent that the Legislature expressly waives its sovereign immunity, and officials and employees of the Ho-Chunk Nation acting within the scope of their duties or authority shall be immune from suit.
ART XII, Section 2. Suit Against Officials a/nd Employees. Officials and employees of the Ho-Chunk Nation who act beyond the scope of their duties or authority shall be subject to suit in equity only for declaratory and non-monetary injunctive relief in Tribal Court by persons subject to its jurisdiction for purposes of enforcing rights and duties established by this constitution or other applicable laws.
Ho-Chunk Rule of Civil Procedures
Rule' 5(C)(1). Personal Service. The required papers are delivered to the party in person by the bailiff, or when authorized by the Court, a law enforcement officer from any jurisdiction, or any other person not a party to the action who is eighteen (18) years of age or older. Personal Service is required from the initiation of actions in the following (a) Relief requested is over $5,000.00, excluding the enforcement of foreign child support orders.
Ho-Ciiunk Nation Personnel Policy and Procedures Manual, (September 14, 1995 Edition) [hereinafter HCN Personnel Manual] Chapter 12, Employment Conduct, Discipline, and Administrative Review
Security and. Confidentiality, p. 42
It is the policy of the HoChunk Nation to maintain strict control over entrance to the premises, access to work locations *236and records, computer information, and cash or other items of monetary value. Employees who are assigned keys, given special access, or assigned job responsibilities in connection with the safety, security, or confidentiality of such records, material, equipment, or items of monetary or business value will be required to use sound judgment and discretion in carrying out their duties, and will be accountable for any wrongdoing or acts of indiscretion.
Conflicts of Interest, p. 44
Employees will not allowed to solicit, obtain, accept, or retain any personal benefit from any supplier, vendor, customer, client, etc., or any individual or organization doing or seeking business with the Ho-Chunk Nation.
B. Behavior, p. 45^46
I. Willful or negligent violation of the Personnel Policies and Procedures, unit operating rules, or related directives.
3. Engaging in a conflict of interest activity.
4. Conduct that discredits the employee or the Nation, or willful misrepresentation of the Nation.
6. Knowingly falsifying, removal, or destruction of information related to employment, payroll, or work related records or reports.
II. Unauthorized removal or use of any Tribal property, or that of its clients, customers, or agents.
C. Performance, p. 47
6. Careless, negligent, or improper use of Tribal property, equipment or funds, including unauthorized removal, or use of private purposes, or use involving damage or unreasonable risk of damage to property.
8. Misuse of authority of position for personal gain.
9. Embezzlement of tribal funds or property.
Revised Head Start Program Performance Standards (November 5, 1996)
1304.50(g)(2) Grantee and delegate agencies must ensure that appropriate internal controls are established and implemented to safeguard Federal funds in accordance with 45 CFR 1301.13.
General Principles for Determining Allowable Costs, Circular No. A-87, Attachment A
A.l. The principles are designed to provide that Federal awards bear their fair share of cost recognized under these principles except where restricted or prohibited by law.
A.2.a.
1. Governmental units are responsible for the efficient and effective administration of Federal awards through the application of sound management practices.
2. Governmental units assume responsibility for administering Federal funds in a manner consistent with underlying agreements, program objectives, and the terms and conditions of the Federal award.
3. Each governmental unit, in recognition of its own unique combination of staff, facilities, and experience, will have the primary responsibility for employing whatever form of organization and management techniques may be necessary to assure proper and efficient administration of Federal awards.
Wisconsin Winnebago Nation Financial Procedures Manual (November 13, 1992)
If the planned expenditure exceeds $500.00 or 10% of the line item a Pur*237chase Request will be forwarded to Finance for sign-off that funds are available before the procurement or obligation is made.
DEPARTMENT OF HEALTH AND HlIMAN SERVICES 45 CFR Part 92 (March 11, 1988)
92.20(b)(1) Financial reporting. Accurate, current, and completed disclosure of the financial results of financially assisted activities must be made in accordance with the financial reporting requirements of the grant or subgrant. 92.20(b)(3) Internal control. Effective control and accountability must be maintained for all grant and subgrant cash, real and personal property, and other assets. Grantees and subgrantees must adequately safeguard all such property and must assure that it is used solely for authorized purposes.
PROCEDURAL HISTORY
Pursuant to HCN R. Civ. P. 5(C)(1)(a), Ms. Lang was personally served at # 31857 Fremont Avenue, Tomah, Wisconsin on July 17, 1998. Furthermore, the Court served all following Notices of Hearings on the defendant by mail. Ms. Lang’s only correspondence in this case was the Answer filed on August 6, 1998.2 On August 26, 1998, the Court convened a Scheduling Hearing without the defendant, at which time, the Court ordered the plaintiff to send the defendant a letter with the accompanying tribal laws applicable to the suit. On October 30, 1998, the plaintiff filed a Brief in Support of the Motion for Summary Judgment and Motion for Summary Judgment, This Court denied the plaintiffs Motion for Summary Judgment (dated December 21, 1998) because issues of material fact existed. On February 12, 1999, the Trial for this case commenced. It is ripe for a decision.
FINDINGS OF FACT
1. The Ho-Chunk Nation is a federally recognized American Indian tribe.
2. As a federally recognized American Indian tribe and sovereign nation, the Nation is an employer with its executive offices located at P.O. Box 667, 405 Airport Road, Black River Falls, WI 54615.
3. As the plaintiff in this matter, the Nation brings this action on behalf of it’s Education Department-Head Start Program. Ms. Christine Raven Kerry is Ms. Lang’s successor as HCN Headstart Director. 4.
As testified by Ms. Raven Kerry, the HCN Head Start Program operates six (6) centers located in Wittenberg, Wisconsin Dells, Tomah, Nekoosa and Black River Falls (Sand Pillow and Mission Centers). Children taught and cared for in these centers are ages 3 through 5.
5. Ms. Raven Kerry testified that, generally, ordered supplies for the Head Start centers are delivered directly to the centers. During the summer months while the centers are closed, the supplies ordered are delivered to the Black River Falls Tribal Executive Complex for storage. (Also see, Affidavit of Ch ristine Raven Kerry.)
6. The defendant, Tammy Lang, was employed by the Nation from August 1993 until May 16, 1997. First, Ms. Lang served as the Headstart Nutrition Coordinator. Up to her resignation, Ms. Lang served as the Director for the HCN’s Head Start program.
*2387. On or about March 19, 1997, the Kaplan School Supply Corporation [hereinafter Kaplan] submitted invoices reflecting orders as follows:
[[Image here]]
8. On March 26, 1997 and April 10, 1997, Ms. Lang signed HCN Disbursement Vouchers and the associated Kaplan invoices to the HCN Treasury for payment of the ordered items, G/L Account # 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-648-5222 (Plaintiffs Exhibit 13 G/L Account # 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-648-5222 is crossed out and substituted with G/L Account # 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-648-5222):
[[Image here]]
9. On April 10, 1997, the HCN’s Treasury cut a check (Check No. 007991) worth $2,585.15 to Kaplan satisfying invoice nos. 310973.001-$1,362.50; 10974.00-$626.55; 310975.001-$385.70; and 311233.001-$210.40. (See, Plaintiffs Exhibit 15).
10. Ms. Laurel Sackett-Meek testified to obtaining the Kaplan invoices from Rhonda Anderson, a former Kaplan employee who took Ms. Lang’s orders.
11. Ms. Lang had the Nekoosa Head Start staff person, Marjorie Weissmiller, receive and hold an order with invoice no. 310973.001 [hereinafter $1300 Nekoosa order] for her. Tammy Lang explained the shipping was arranged to avoid shipping and tax for her paid items since the deliveries would be on tribal trust lands. After receipt of the order, Ms. Weissmiller suggested Ms. Lang arrive with two trucks to haul away the items. Ms. Sackett-Meek said Lang was able to haul the ordered supplies in one truck only. (See, Plaintiffs Exhibits 25 and 33.)
12.On or about March 26, 1997, Kap-lan submitted an invoice (326439.001) reflecting an order [hereinafter $6000 plus order] to be shipped to Tammy Lang.
[[Image here]]
13.On or about May 9, 1997, Kaplan prepared an Invoice Reprint to Kaplan Invoice (310973.001) changing the shipping site from Ho Chunk Hd St to: *239Head Start, T. Lang, 813 Aspen Lane, Tomah, WI.
Invoice No. $ Amount Shipping Site Plaintiffs Exhibit No.
326439.001 $6,545.21 Head Start T. Lang-813 Aspen Lane, Tomah, WI 54660 5
14. On May 13, 1997, Ms. Lang signed HCN Disbursement Voucher and associated Kaplan Invoice 326439.001 to the HCN Treasury for payment of the ordered items, G/L Account # 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-648-5222. (See, Plaintiffs Exhibit 3.)
15. On May 15, 1997, the HCN Treasury cut a check (Check No. 008114) worth $6,545.21 to Kaplan satisfying Invoice No. 326439.001 (See, Plaintiffs Exhibit 6.)
16. On May 16, 1997, Tammy Lang voluntarily resigned from the HCN Head Start Director position.
17. Ms. Sackett-Meek testified that the defendant said she was departing to start her own child care center.
18. On or about May 24, 1997, Roadway Freight delivered eighteen (18) parcels to “Head Start, Tammy Lang, 813 Aspen Ln, Tomah, WI 54660 for shipper invoice number' 326439.001 with notation ‘cust has special invoice requirements.’ ” (See, Plaintiffs Exhibits 16 and 34, Page 2 with defendant Lang’s signature.)
19. The United Parcel Service [hereinafter UPS] delivered twenty-three (23) parcels3 to “Head Start, Tammy Lang, 813 Aspen Ln, Tomah, WI 54660” for shipper invoice number 326439.
Invoice No. Parcel # Customer Delivery Date and Time Plaintiffs Exhibit No.
326439 7 06/12/97 at 9:38 a.m. 17 left with a PERSON AT YOUR CUSTOMER’S LOCATION
326439 9 06/06/97 at 10:36 a.m. 18 left in your CUSTOMER’S GARAGE
326439 6 06/10/97 at 10:53 a.m. 18 left with a PERSON AT YOUR CUSTOMER’S LOCATION
326439 9 06/06/97 at 10:36 a.m. 19 left in your CUSTOMER’S GARAGE
326439 1 06/04/97 at 10:50 a.m. 20 left with a PERSON AT YOUR CUSTOMER’S LOCATION
20.At the beginning of June 1998, Ms. Sackett-Meek began investigating a $6,000.00 order to Kaplan for Tammy Lang faxed by a data entry coordinator. Upon investigation, Ms. Sackett-Meek and Ms. TwoBears verified that the $6,545.21 order paid by the Nation’s Education budget was delivered to Ms. Lang’s home address. (See, Plaintiffs Exhibit 23.)
21.On June 17, 1997, a memo from Laurel Sackett-Meek to Mike Murphy, through Cheryl TwoBears stated she inquired to Nekoosa Head Start staff Marjorie Weissmiller about the Head Start order delivered to Nekoosa. In turn, Ms. Weissmiller was documented the circumstances in which the $1300 Nekoosa order *240was picked by Ms. Lang.4 (See, Plaintiffs Exhibits 25 and 33.)
22. The June 17, 1997 memo included a six page attachment. Attachment pages 1^4 were the Kaplan Invoice Reprint pages with highlighting showing an inventory of ordered items taken by Ms. Lang. Attachment page 5 was the HCN Disbursement Voucher (same as Plaintiffs Exhibit 3). Attachment page 6 was the HCN Head Start Budget Report ending 5/31/97 (See Plaintiffs Exhibit 33 Attachments.).
23. Ms. Sackett-Meek testified she used the Kaplan catalog detailing age appropriateness for the inventory, reported in the June 17, 1997 memorandum. Supplies ordered such as cradles and changing table were determined to be age inappropriate for use in the HCN Headstart Centers. Large ticketed items, i.e, play clothes and kitchen sets, were also inappropriate since these items were already in use at all Headstart centers.
24. Prior to July 3, 1997, the defendant resided at 813 Aspen Lane, Tomah, WI 54660. (See Defendant’s Answer to the Complaint) As of July 3, 1997, Ms. Lang resides at Route 2, Box 327AB, Tomah, WI 54660.
25. In the summer of 1997, Ms. Diana Goree of the Neenk Chunk Gra Head Start (Wisconsin Dells Head Start site) said Ms. Lang called at her home. Ms. Lang requested that Ms. Goree meet her at the center and open their storage garage. Ms. Lang arrived in a truck, unloaded many boxes into the storage garage. Ms. Goree secured the garage and went home. (See, Plaintiffs Exhibit 31.)
26. On August 28, 1997, the HCN Department of Justice Tribal Attorney William Boulware wrote a letter to Ms. Tammy Lang inquiring about deliveries made to her address and the use of federal funds expended for uses not authorized by the Nation. (See, Plaintiffs Exhibit 1.)
27. On or about September 3, 1997, Ms. Sheryl Cook and Velvet Cooper went through the shed in the Dells, a.k.a. Neenk Chunk Gra storage garage, but found no items returned by Ms. Lang. (See, Plaintiffs Exhibit 30.)
28. Ms. Tammy Lang responded to Attorney Boulware’s letter in a letter received on September 8, 1997. Ms. Lang indicated she had no knowledge about Head Start funds. She wrote that she did not receive any parcels at her home because she was in another state recovering from stress overload. (See, Plaintiffs Exhibit 2.)
29. On September 11, 1997, Mr. Boul-ware wrote Ms. Lang a follow-up letter disclosing the discrepancies between her response letter and the records of UPS and the HCN Disbursement Vouchers. This letter stated that the Nation was commencing communications with the U.S. Division of Discretionary Grants and the Wisconsin State agencies. (See, Plaintiffs Exhibit 22.)
30. Ms. Raven Kerry testified after the inventory and audit of the Headstart Program, she wrote a memorandum to Mr. Boulware, Counsel for the Nation. On December 10, 1997, Christine Raven Kerry, (HCN) Head Start Director concluded that Ms. Lang obtained supplies for her own use totaling $7,907.71. Ms. Raven Kerry included a training because Ms. Lang spent $36.90 for attending an inappropriate training session for infants and toddlers. (See, Plaintiffs Exhibit 32.)
*24131. On January 12, 1998, Grant C. Johnson, First Assistant U.S. Attorney wrote a letter to Mr. Boulware indicating the receipt of a December 3, 1997 letter with attachments. Mr. Johnson also wrote that the case will be assigned to Assistant United States Attorney Daniel Bach. (See, Plaintiffs Exhibit 29.)
32. On February 3, 1998, Christine Raven Kerry, (HCN) Head Start Director, sent Mr. Boulware a memorandum recording an inquiry to Ms. Diana Goree of the Wisconsin Dells Head Start Dells and the incident with Ms. Tammy Lang. (See, Plaintiffs Exhibit 31.)
33. During the trial, Ms. Raven Kerry testified about the memorandum she received from Sheryl Cook. On February 4, 1998, Sheryl Cook wrote that, upon returning on February 4, 1998 to the Wisconsin Dells site, she found some items in Rubbermaid containers, old boxes, and a couple items were being used by the Center. (See, Plaintiffs Exhibit 30.)
34. On February 5, 1998, Mr. Boulware wrote a letter to Mr. David R. Brechwald of the Federal Bureau of Investigation, summarizing an inventory made of the Wisconsin Dells Neenk Chunk Gra storage facility for items unloaded by Ms. Tammy Lang and other internal investigative reports. (See, Plaintiffs Exhibit 28.)
35. On February 26, 1998, Mr. Theodore R. Wasky, Supervisory Senior Resident Agent of the Federal Bureau of Investigation, wrote to Ms. Peggy a. Lautenschlager, United State District Attorney. The letter stated that the investigation shows Ms. Lang, as former director, used federal grant money, approximately $8,000.00, for classroom supplies. The investigator said Ms. Lang did order the supplies, and personally receiving such supplies, but was unable to determine if Ms. Lang was in possession of the supplies or if, as Ms. Lang claimed, she had turned over all the supplies to Wisconsin Dells. (See, Plaintiffs Exhibits 24 and 27.)
36. On March 13, 1998, Mr. Daniel P. Bach, Assistant U.S. Attorney, wrote Mr. Boulware a letter indicating that the U.S. District Attorney’s office was declining to prosecute the matter of Tammy L. Lang and the Ho-Chunk Nation Head Start Program. (See, Plaintiffs Exhibit 26.)
37. On July 16, 1998, the plaintiff, the Ho-Chunk Nation, filed a Complaint on behalf of its Head Start Program in the Ho-Chunk Nation Trial Court.
38. On or about August 6, 1998, the defendant, Tammy Lang, filed an Answer to the Complaint filed.
39. Among other responses, Ms. Lang stated .that she began caring for three children, full time, in her residence on August 25, 1997. She also cares for a couple of other children on a part-time or occasional basis. (See Defendant’s Answer to the Complaint).
DECISION
The Ho-Chunk Nation is a federally recognized American Indian tribe. The Nation brings this action on behalf of it’s Department of Education-Head Start Program. The Head Start Program receives federal grants for funding support. The defendant served as the HCN Director of the Head Start program before her resignation on May 16, 1997. The incidents associated with the Complaint occurred just prior to, about the same time, and shortly after the defendant resigned from her position as HCN Head Start Director.
The plaintiff alleges that Ms. Lang knowingly misappropriated federal funds designated for use in the HCN Headstart program. Furthermore, Ms. Lang used the funds for personal gain to start her *242own child care business. Due the serious nature of the allegations, this Court will begin discussing its jurisdiction to hear the matter.
I. JURISDICTION
a. Subject Matter Jurisdiction.
At first impression, the Ho-Chunk Nation Trial Court has jurisdiction over this subject matter because the Nation’s Constitution, Art. I, Sec. 2. clause inclusively states “all persons or activities.”
Section 2. Jurisdiction. The jurisdiction of the Ho-Chunk Nation shall extend to all territory set forth in Section 1 of this Article and to any and all persons or activities therein, based upon the inherent sovereign authority of the Nation and the People or upon Federal law.
Furthermore, Ho-Chunk Nation Constitution, Art. VII, Sec. 5(a). grants to its Trial Court “original jurisdiction over all cases and controversies, both criminal and civil, in law or in equity, arising under the Constitution, laws, customs and traditions of the Ho-Chunk Nation, including cases in which the Ho-Chunk Nation, or its officials and employees, shall be a party.” This particular section mandates that “any such case or controversy arising within the jurisdiction of the Ho-Chunk Nation shall be filed in Trial Court before it is filed in any other court,.” (Emphasis added.) In this case before the Court, the case or controversy arose in the Nation’s Head-start Program, whereby orders, payments, and deliveries occurred on tribal trust lands, with the exception of those deliveries that Defendant Lang diverted to her home address. The Headstart Program established its Headstart Centers on tribal trust lands to serve its surrounding community members. The acts of misappropriation of federal funds designated for use by the Nation’s Headstart program give rise to violations of the Ho-Chunk Nation Constitution and related laws, i.e., the HCN Personnel Procedures, and federal guidelines for using Headstart grant monies. The United States Supreme Court has ruled that cases arising in Indian country, whenever possible, should be first heard in the tribal courts. See, National Farmers Union Ins. Companies v. Crow Tribe, 471 U.S. 845, 856, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985). This includes the ability of tribal courts to determine jurisdictional matters before them. See, New Mexico v. Mescalero Apache Tribe, 462 U.S. 324, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983). Tribal court exhaustion doctrine was a policy recognized by the U.S. Supreme Court. See, Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 19, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987). Therefore, this Court is the appropriate forum to hear this case.
B. Personal Jurisdiction.
In this matter, it is prudent to more closely examine the personal jurisdiction defined by the relationship between the former HCN Headstart Director and the Nation. In this case, the consensual relationship and the dispute began while Ms. Lang was the Director of the Nation’s Headstart Program. As an employee of the Nation, Ms. Lang admitted to the responsibility for having knowledge of the HCN Personnel Manual. Ms. Lang, as a former employee of the Nation, consented herself to personal jurisdiction of the Nation and its tribal court by her affiliation and appointment as a HCN Headstart employee/Director. While an employee, Ms. Lang also had a property right to invoke her rights to protection under Ho-Chunk Tribal laws. By mutual consent, the Nation also has the right to evaluate the work performance of such employee based on work need, revenues available, faithful and *243effective performance, proper personal conduct and continued fitness of the employee. This mutually consented relationship continued while the defendant received supplies in her home and on behalf of the Nation’s Headstart. As a matter of civil law, the HCN Trial Court has personal jurisdiction to hear this matter.
II. ALLEGATIONS OF CIVIL CONVERSION/MISAPPROPRIATIONS.
The plaintiff brought this action as a civil conversion alleging that the former Headstart Director used her position to misappropriate tribal funds for her personal use. Ms. Lang, the defendant, is charged with knowingly violating tribal laws governing the use of Headstart monies when she purchased infant and toddler supplies, obtained training to care for infants and toddlers and diverted delivery of ordered supplies to her personal residence rather than the HCN’s Headstart centers.
The plaintiff offered this civil action under the tribal laws of the Ho-Chunk Nation, specifically the HCN Personnel Manual and offered the Wisconsin state common law of civil conversion as persuasive argument. The plaintiff referred to Schara v. Thiede, 58 Wis.2d 489, 206 N.W.2d 129 (1973) whereby the Wisconsin Supreme Court stated:
Any distinct act of dominion wrongfully exerted over another’s personal property in denial of or inconsistent with his rights therein, such as a tortious taking of another’s chattels, or any wrongful exercise over another’s goods, depriving him of possession, permanently or for an indefinite time. See, Kozak v. U.S. Fidelity & Guaranty Co., 120 Wis.2d 462, 470, 355 N.W.2d 362 (Wis.App.1984).
According to Black’s Law Dictionary civil conversion is defined as “an unauthorized assumption and exercise of the right of ownership over goods belonging to another,” p. 231. Absent specific case law about civil conversion in the Ho-Chunk Nation, this Court specifically reviewed the governing laws of employment.
The Nation set out laws to govern employment by the Nation and for it’s employees. In Jeait Day, et. al. v. HCN Personnel Department (HCN Tr. Ct.) this Court set out a presumptive rule of knowledge. While an employee of the Nation, Ms. Lang had the responsibility and duty to have knowledge of the employment law so that she can adhere to all tribal policies, rules, directives, and procedures prescribed by the Nation. As an employee of the Nation, Ms. Lang admitted to the responsibility for having knowledge of the HCN Personnel Manual. As testified by current Headstart employees and by evidence offered into the Court, Ms. Lang violated the law of employment order in the Nation. The plaintiff offered evidence showing that the defendant did convert tribally granted monies and tribal property for her personal use, thereby committing the act of civil conversion.
As the HCN Director of the Head Start program, the plaintiff asserted that the defendant had the duty and authority to oversee the operation and administration of the program, such as purchase and receive supplies, and accounting for the spent federal grant funds in financial reports. Pursuant to 42 U.S.C. § 9846, the Head Start Program director must submit reports detailing the use of federal monies received to the U.S. Secretary of Health and Human Services.
a. Using Tribal Monies.
In the first instance, the plaintiff showed that merely by ordering the supplies, Ms. Lang’s action was a tribal violation. Ms. Lang, as HCN Headstart Director, knew that the program serves families with chil*244dren ages 3 to five years. Yet, the plaintiff showed that, while Director of the HCN Headstart Program, Lang ordered infant and toddler supplies and large-ticket items from the Nation’s own Headstart equipment supplier, Kaplan in March 1997. The plaintiff pointed out that only Tammy Lang’s name appeared on the orders invoice of the supplier, Kaplan. (See, Plaintiff’s Exhibits 4 and 5.) Plaintiffs witness Ms. Sackett-Meek testified that the Nation already owned these large ticketed items prior to the opening of each of six Headstart centers. Ms. Sackett-Meek testified that she checked each item for their age appropriateness and found the items, ordered and paid by the Nation, targeted for children, whose ages range from infant to two years-a toddler stage. (See, Plaintiffs Exhibits 5, 8, 25, and 33.) In particular, she pointed out items ordered by Lang specifically for infants and toddlers were the cradles and changing tables. Ordering inappropriate items with Headstart funds directly violates the HCN Personnel Manual, Ch. 12(b) 1, 3, 6.
In the second instance, the plaintiff showed how Defendant Lang used her authority to gain payment approval from the plaintiff. As testified by Ms. Raven Kerry, employees must abide by specific approval process. The process for supplies must contain signature authority by two education department personnel. As HCN Director for Head Start, Ms. Lang was in a position to gain reimbursement from the Nation to pay for the submitted and signed for new supplies without following the tribal procedural protocol. Ms. Tammy Lang signed and submitted HCN Disbursement Vouchers for payment of the ordered infant and toddler supplies from Kaplan using G/L Account # 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-648-5222. (See, Plaintiffs Exhibits 3, 7, 9, 11, and 13.) The Ho-Chunk Nation paid Kaplan for the orders associated with Kaplan Invoices 310973.001, 310974.001, 310975.001, 311233.001, and 326439.001. (See, Plaintiffs Exhibits 15 and 6.) No party disputed that Ms. Lang ordered, signed, and submitted HCN Disbursement Vouchers for payment of ordered infant and toddler suppliers from Kaplan, a tribal supplier, including the defendant. Improper use of tribal property, misuse of an employee’s authority, and embezzling tribal funds are direct violations of violates the HCN Personnel Manual, Ch. 12(C) 6, 8, and 9.
B. Taking of Tribal Property.
The plaintiff showed how Ms. Lang took tribal property. The plaintiff presented evidence and testimony showing that Ms. Lang diverted the ordered supplies in two different manners. Ms. Raven Kerry testified that normally supplies were delivered to Head Start sites, located on the Nation’s trust lands. During the summer break, Ms. Raven Kerry added, supplies are delivered to the HCN Executive Building for storage until the sites reopen for the school year. The plaintiff asserted that as HCN Director for Head Start, Ms. Lang was in a position to make special customer1 invoice requirements thereby changing the site for delivery of orders without knowledge of other HCN employees.
The defendant handled the Nekoosa shipment one way. Ms. Lang told the tribal employee of Nekoosa Head Start center that those supplies on Kaplan Invoice No. 310973.001 expected to arrive at the center belonged to herself. Based on such statements, the Nekoosa Head Start agent reached Ms. Lang when the supplies arrived. Ms. Sackett-Meek testified how she discovered this transaction during her1 investigation into Ms. Lang’s actions just prior to her resignation. (See, Plaintiffs Exhibit 25 and 33) Ms. Lang violated the Nation’s Personnel Manual, Ch. 12, p. 44, *245by ordering supplies from a tribal supplier for her personal use but also misuse of authority of position for personal gain. The events reported by the Nekoosa Head Start agent was not disputed by the parties.
A second shipment clearly shows that Ms. Lang diverted supply deliveries from policy accepted HCN Head Start sites to her home address. (See, Plaintiffs Exhibits 4 and 5.) The plaintiff pointed out how the supplies identified on Kaplan Invoice no. 326439.001 were diverted from Ho Chunk Head Start at W9814 Airport Rd., Black River Falls, WI to T Lang, 813 Aspen Lane, Tomah, WI 54660 by special customer invoice requirement. (See, Plaintiffs Exhibit 16 and 34 with defendant Lang’s signature. Also see, Plaintiffs Exhibits 4, 5, 17, 18, 19, and 20.) Neither party disputed that 813 Aspen Lane in Tomah Wisconsin formerly was the family residence of Tammy Lang prior to August 1997. Although she initially denied receiving the supplies at her home, in her answer to the Federal Bureau of Investigation, Ms. Lang later admitted to receiving supplies at her home. (See, Plaintiffs Exhibits 24 and 27, and the Defendant’s Answer.) Also, her name was identified on a shipping notice by witness Sackett-Meek. Not only did Ms. Lang’s actions breach the security and confidentiality clause of the HCN Personnel Manual, page 42, but she also violated the HCN Personnel Manual, Ch. 12(b) 11.
C. Using Tribal Property for Personal Reasons.
The plaintiff convinced this Court that the defendant was using the property purchased with tribal monies for personal Tea-sons. Witness Sackett-Meek testified that Ms. Lang left to open a day care center. Plaintiff also presented a business card that Defendant Lang presented to the Nation during an unemployment hearing. (See, Plaintiffs Exhibit 35.) Ms. Sackett-Meek also testified that items ordered were for a younger cliental than that served by the Nation’s Headstart Program. Those large-ticket items age appropriate for the Headstart cliental, were items previously purchased and already being used in the centers. Although initially denied receiving the supplies at her home, in her answer to the Federal Bureau of Investigation, Ms. Lang later admitted to receiving supplies at her home. (See, Plaintiffs Exhibits 24 and 27, and the Defendant’s Answer.) Also, her name was identified on a shipping notice by witness Sackett-Meek.
This Court finds that Ms. Lang did commit civil conversion. It was proven by testimony and evidence that Ms. Lang wrongfully using tribal head start monies to purchase items that were not useful or available to the Headstart Program. In doing so, Ms. Lang violated numerous tribal laws and proper procedural protocol. Furthermore, the plaintiff proved that Ms. Lang wrongfully took possession of these supplies.
III. BREACHING OF FIDUCIARY DUTIES.
The Court is convinced by the plaintiffs presentation of evidence during trial that the defendant did deceive the Nation during the investigation. Moreover, all of the defendant’s actions are a direct violation of her fiduciary duty to the Nation as an employee. The plaintiff cited Black’s Law Dictionary defining “fiduciary” as an individual “having the duty, created by his undertaking, to act primarily for another’s benefit in matters connected with such undertaking.” Page 625 [6th Edition]. According the Personnel Manual page 2, the Ho-Chunk Nation asserted its right to employ the best qualified per*246sons and continued employment is based on among other elements “faithful and effective performance.” While an employee or official is acting within the scope of his/her duties, the Nation is protected by its sovereign immunity clause pursuant to HCN Constitution, Art. XII, Sec. 1. However, in this case before this Court, while an employee of the Nation, Ms. Lang did act outside the scope of her authority, thus violating Ho-Chunk tribal law. According to HCN Constitution, Art. XII, Sec. 2, such employee acting outside the scope of then- authority is not immune from suit. Ms. Lang accepted the duty to adhere to the employment policies of the HCN when she accepted employment with the Nation. Furthermore, upon accepting the position as the HCN Headstart Director, she accepted additional duties to comply with federal regulations along with the tribal laws. Ms. Lang had the duty and authority to oversee the operation and administration of the program, such as purchase and receive supplies, and accounting for the spent federal grant funds in financial reports. The Court finds that Ms. Lang failed to uphold her fiduciary duty to the Nation.
Among other reported and recorded illegal actions inappropriately done by the defendant, the plaintiff used the defendant’s letter's demonstrating her' contradicting statements about her1 involvement in the matter-. (See, Plaintiff’s Exhibits 24 and 27.) The plaintiff showed that the defendant denied having knowledge about the funds in question in her response to the plaintiffs letter dated September- 8, 1997. In this same response, Ms. Lang denied receiving head start supplies at her home address because she was out of state recovering from stress. (See, Plaintiffs Exhibit 2.) After the Federal Bureau of Investigation began their independent investigation, Ms. Lang admitted that she did receive the items because there was no storage space available but later she re turned the supplies to the Nation’s Wisconsin Dells site. (See Defendant’s Answer to the Complaint) The plaintiff attempted to gain the federal investigator’s remarks, via affidavit, but was unsuccessful with his retirement from the agency.
IV. RELIEF AWARDED.
In conclusion, as recipient of the federal funds, the Nation must reimburse any unqualified expenditures to be eligible for' future grants. The Nation was harmed twice, by the defendant depriving the Nation the right to direct use and benefit of the monies she used to purchase infant, toddler and large item supplies. The second harm occurred when the Nation had to reimburse the federal government for the inappropriate spending by Ms. Lang and her personal supplies.
Therefore, as the individual responsible for' ordering, signing, submitting and receiving the unqualified expenditures of infant and toddler supplies from Head Start Program grant monies, this Court hereby finds Ms. Tammy Lang shall reimburse the Nation for these unqualified expenditures. Due to her inappropriate actions as the HCN Headstart Director, Ms. Lang jeopardized the Nation’s ability to serve its surrounding communities with educational care services. The Nation, under the auspice of federal guidelines for' the safety and care of children enrolled in it’s Head-start program, cannot recycle items returned by Ms. Lang without potentially jeopardizing the safety of those children using those items. In it’s request for restitution, the Plaintiff asked that the defendant reimburse the Nation in the amount of seven thousand, nine hundred and seven dollars and seventy-one cents ($7,907.71 U.S.). This number is reduced by the value of three items kept by the Nekoosa site. Ms. Lang shall reimburse the Ho-*247Chunk Nation seven thousand, eight hundred and forty-six dollars and eighty-six cents ($7,846.8tí U.S.) by certified check or money order. Ms. Lang shall submit the money order to the HCN Treasury Department where the funds shall be placed in the HCN Department of Education program G/L Account 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-648-5222. Receipt of the payment made by Ms. Lang shall be submitted to the HCN Trial Court within five days of the receipt of the payment.
The Court acknowledges that the plaintiff withdrew a request for reimbursement of costs and fees associated with this litigation. However, in the interest of serving justice for all, this Court provided the defendant numerous occasions to defend herself. In convening all these hearings for the defendant’s sake, Plaintiffs counsel religiously abided by the Court’s orders for these hearings. Therefore, this Court also orders that Ms. Lang repay the Nation for its attorney fees for each hearing appearance. The plaintiff shall submit a notice to the Court and the defendant delineating the exact amount of attorney’s fees for each appearance within one month of the issuance of this order.
Finally, pursuant to Wis Stat. § 806.245(1), the judicial records, orders and judgments of an Indian Tribal Court in Wisconsin and acts of an Indian tribal legislative body shall have the same full faith and credit in the courts of this state as do the acts, records, orders and judgments of any other governmental entity.
CONCLUSION
This Court finds in favor of the plaintiff in this matter. The defendant is responsible for making the plaintiff whole. The case will remain open until receipts showing payments by the defendant are filed in the Court records.
All parties have the right to appeal a final judgment or order of the Ho-Chunk Nation Trial Court. If either party is dissatisfied with the decision rendered by this Court, they may file a Notice, of Appeal with the Ho-Chunk Nation Supreme Court within thirty (30) calendar days from the date such final judgment or order is rendered.

. Ms. Lang was provided ample written notice to all prior hearings convened in the Ho-Chunk Nation Trial Court, but she, as pm se or by counsel, failed to defend herself throughout this litigation.

. On August 6, 1998, the Court sent a Deficiency Notice to Ms. Lang for failing to serve ihe opposing parties a copy of her Answer.

. Ms. Sackett Meek testified that Plaintiff's Exhibit 18 and Plaintiff's Exhibit 19 duplicate one delivery identified as—date 06/06/97, time at 10:36 a.m. and parcel number of 9.

. Based on invoice, three items worth $60.85 and shown on the reprint were held for use by the Nekoosa Head Start center. Ms. Weiss-miller indicated Ms. Lang claimed she paid for and therefore took possession of the remaining, $1,301.65 worth of items.